**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Sophia Sahagún,<br><br>Plaintiff,<br><br>v.<br><br>Themis Bar Review, LLC,<br><br>Defendant. | Case No. 24-cv-2065 |

**THEMIS BAR REVIEW LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607-7932
Telephone: (312) 964-7800
Facsimile: (214) 694-7799

# TABLE OF CONTENTS

**Page**

Introduction ..... 1

Factual Background ..... 2

I. The Themis Website Engages in Limited Tracking With User Consent. ..... 2

A. Themis provides video content to users who enroll in Themis courses, and it tracks user activity via the Themis Meta Pixel. ..... 2

B. Use of the Themis Website, including its legal education video content, is governed by various terms and conditions. ..... 3

II. Plaintiff Brings VPPA and CIPA Claims Against Themis. ..... 5

Legal Standard and Materials to be Considered by Court ..... 5

I. Plaintiff bears the burden to establish jurisdiction and a plausible claim. ..... 6

II. The Complaint incorporates by reference the Themis Website. ..... 6

III. Alternatively, the Court can take judicial notice of the Themis Website. ..... 7

Argument ..... 7

I. The Court Lacks Subject-Matter Jurisdiction. ..... 7

A. Plaintiff has not suffered an injury-in-fact because there is no inherent privacy interest in legal education video watch history ..... 7

B. Any injury suffered by Plaintiff is not fairly traceable to Themis's conduct because it was self-inflicted. ..... 9

II. Plaintiff Has Failed to State a VPPA Claim. ..... 9

A. Themis is not a "video tape service provider" within the meaning of the VPPA. ..... 9

B. Themis did not disclose Plaintiff's "personally identifiable information." ..... 10

C. Any disclosure by Themis falls into the VPPA's marketing safe harbor. ..... 11

D. The VPPA's application to Themis violates the First Amendment. ..... 13

III. Plaintiff Has Failed to State a CIPA Wiretapping Claim. ..... 13

A. No communication contents were intercepted by Meta. ..... 13

B. Plaintiff consented to any interception that did take place. ..... 14

IV. Plaintiff Has Failed to State a CIPA Eavesdropping Claim. ..... 14

A. Themis did not eavesdrop upon or record anything. ..... 15

B. The communications at issue were not confidential. ..... 15

C. The Meta Pixel is not an electronic amplifying or recording device. ..... 15

D. Plaintiff consented to any eavesdropping or recording that did take place. ..... 16

Conclusion ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 11

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ........ 8

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ........ 6

*In re BPS Direct, LLC*,
2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) ........ 8

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ........ 6

*CS Wang & Assoc. v. Wells Fargo Bank, N.A.*,
305 F. Supp. 3d 864 (N.D. Ill. 2018) ........ 15

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
770 F.3d 586 (7th Cir. 2014) ........ 6

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 14

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023) ........ 6

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 15

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018) ........ 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 13

*Hepp v. Ultra Green Energy Services, LLC*,
2016 WL 1073070 (N.D. Ill. Mar. 18, 2016) ........ 7

*Martin v. Meredith Corp.*,
657 F.Supp.3d 277 (S.D.N.Y. 2023) ........ 11

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ....................10, 11

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) ....................8

*In re Nickelodeon Consumer Priv. Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014)....................14

*Parvati Corp. v. City of Oak Forest, Ill.*,
630 F.3d 512 (7th Cir. 2010) ....................7, 9

*Persinger v. Sw. Credit Sys., L.P.*,
20 F.4th 1184 (7th Cir. 2021) ....................8

*Saunders v. Hearst Television, Inc.*,
2024 WL 126186 (D. Mass. Jan. 11, 2024)....................13

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ....................14

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....................13

*Tobey v. Chibucos*,
890 F.3d 634 (7th Cir. 2018) ....................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................7, 8

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................14

**Constitutional Provisions**

U.S. Const., amend. 1 ....................9, 13

**Rules and Statutes**

18 U.S.C. § 2710....................5

18 U.S.C. § 2710(a)(3)....................10

18 U.S.C. § 2710(a)(4)....................10

18 U.S.C. § 2710(b)(1) ....................9

18 U.S.C. § 2710(b)(2)(D)....................9, 11, 12

Cal. Pen. Code § 631(a) ....................5, 13, 14

Cal. Penal Code § 632....................5, 14, 15

Fed. R. Civ. P. 12(b)(1)....................................................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................................................1

Defendant Themis Bar Review, LLC ("Themis") files this Memorandum in support of its Motion to Dismiss the Class Action Complaint (ECF No. 1) (the "Complaint") of Plaintiff Sophia Sahagún ("Plaintiff"). This motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## INTRODUCTION

Themis offers online legal education content through themisbar.com (the "Themis Website"). Like many providers of online services, Themis collects data about its customers' website activity, including through a tracking pixel from Meta Platforms, Inc. ("Meta") (formerly Facebook, Inc.) called the Meta Pixel. The Meta Pixel as configured on the Themis Website (the "Themis Meta Pixel") discloses limited information about user activity to Meta: the user's Facebook ID (but only if the user is simultaneously logged into Facebook) and the URL of the webpage visited (but not its title or contents). Themis uses the Themis Meta Pixel to count how many times users visit certain of its webpages. Users are informed of and consent to Themis's use of tracking pixels through various user agreements and informational documents.

Despite the limited and consensual nature of any disclosure—which is apparent from materials the Court can consider on a motion to dismiss—Plaintiff makes conclusory allegations that she was unaware of and did not consent to the Themis Meta Pixel, and she claims that the Themis Meta Pixel's presence violated various state and federal privacy statutes. She seeks statutory and punitive damages.

The suit should be dismissed because this Court lacks subject-matter jurisdiction. Plaintiff suffered no injury-in-fact related to the Themis Meta Pixel because it did not reveal any sensitive information, and in any event, any injury was self-inflicted because she was always aware of the pixel's presence. Additionally, the suit should be dismissed because Plaintiff has not stated a plausible claim: any disclosure by the Themis Meta Pixel was of non-sensitive information, and Plaintiff was aware of and consented to any disclosure.

# FACTUAL BACKGROUND

## I. The Themis Website Engages in Limited Tracking With User Consent.

This Section describes the Themis Website based on allegations in the Complaint, documents incorporated by reference therein, and facts of which the Court can take judicial notice. *See infra* pp. 6-7 (citing cases concerning reliance on webpages at the motion to dismiss stage through the doctrines of incorporation by reference and judicial notice).

### A. Themis provides video content to users who enroll in Themis courses, and it tracks user activity via the Themis Meta Pixel.

The Themis Website offers legal education content, including outlines, video lectures, practice questions, flashcards, and handouts.[1] Plaintiff alleges that she "purchased test preparation services from" and "enrolled for a bar preparation course on" the Themis Website around September 27, 2022. Compl. ¶¶ 1, 5.

To enroll in a bar preparation course, as Plaintiff did, a user must engage in a two-step process of signing up for an account and then enrolling in a specific course. An account is created by (a) navigating to the Sign-Up Page; (b) filling in name, email address, and password; and (c) clicking "SIGN UP."[2] Once logged in, a user can enroll in a particular course (like the bar preparation course that Plaintiff enrolled in) by navigating to the Account Page, clicking "Add Course," selecting the desired course, and clicking "ENROLL."[3] As explained further below, the sign-up and enrollment processes result in several agreements between the user and Themis.

Following enrollment in a California bar preparation course, Plaintiff alleges that she "watched numerous lecture videos" on the Themis Website. Compl. ¶ 5. The URLs for Themis

---

[1] *See* https://www.themisbar.com/faq (cited at Compl. ¶ 28 n.13).

[2] The Sign-Up Page is located at https://www.themisbar.com/sign_up. *See* Decl. of Ellen Sass Douglas ("Sass Decl.") [Ex. 1], ¶¶ 11-13 & Ex. E (reproducing the Sign-Up Page).

[3] The Account Page is located at https://www.themisbar.com/learners/?service=account. *See* Sass Decl. ¶¶ 14-19 & Ex. F (reproducing archived redirect to sign-in page and screenshots of Account Page).

video content ("Themis Video URLs") have a standard format, with the specific item of video content identified only by two numerical identifiers.[4] If a user were to navigate to a Themis Video URL while not logged into a Themis account, the user would be prompted to log in; further, if a user were to navigate to a Themis Video URL while logged in, but without being enrolled in the relevant course and within the same browser session having clicked "LAUNCH" on the relevant course, the user would see the following error: "There was a problem loading the course. Please try again."[5]

Themis tracks user activity on the Themis Website using the Meta Pixel, a tracking tool provided by Meta. Compl. ¶¶ 25-27.[6] Plaintiff alleges that the Themis Meta Pixel transmits to Meta the URL of the webpage visited by the user. *Id.* ¶ 29. Plaintiff further alleges that, if the user is logged into a Facebook account on the same browser (including if the user remains logged in from a previous browser session), the user's browser also transmits the account's Facebook ID number ("FID"), and that Meta can connect the URL with the FID. *Id.* ¶¶ 32, 34. Although the Complaint alleges vaguely that the Themis Website "contains the code for at least eight different Facebook cookies," *id.* ¶ 31, Plaintiff does not identify any data allegedly transmitted to Meta by Themis beyond FID and URL visited.

**B. Use of the Themis Website, including its legal education video content, is governed by various terms and conditions.**

As noted above, Plaintiff alleges she enrolled in bar preparation sources, Compl. ¶ 5, which requires navigating the "sign up" and "enrollment" portions of the Themis Website.

---

[4] For example, the video lecture with task ID 532053 and video ID 1722 has the following URL: https://www.themisbar.com/learners/index.php?service=video&id_task=532053&id_video=1722.

[5] *See* Sass Decl. ¶¶ 20-23 & Ex. G (reproducing archived redirect to sign-in page, screenshot of error message, and contents of a Themis Video URL webpage).

[6] For unclear reasons, the Complaint refers to the Meta Pixel as the "Facebook Tracking Pixel."

On the Sign-Up Page, immediately beneath the "SIGN UP" button, appear the words: "By signing up you agree to Themis Bar's Terms of Service."[7] Similarly, on the Account Page, immediately beneath the "ENROLL" button, appear the words: "By clicking enroll I agree to the Themis Bar Review End User License Agreement."[8] Both the words "Terms of Service" and the words "End User License Agreement" hyperlink to the Terms of Use.[9]

Additionally, any user who navigates to the Themis Website (signed in or not) will see a banner informing visitors of the website's use of cookies (the "Cookie Banner"), and the user will continue to see the banner on each Themis webpage visited until clicking a button on the banner labeled "ACCEPT."[10] The Cookie Banner informs the user that Themis "use[s] cookies and similar technologies to understand how you use our site, remember your login details, and to improve your experience," and invites the user to click a hyperlink to the Cookie Policy.[11] Additionally, the Cookie Banner informs users that, "[b]y continuing to use our site, you accept our use of cookies, revised Privacy Policy, and Terms of Use."[12] The words "Privacy Policy" hyperlink to the Privacy Policy, and the words "Terms of Use" hyperlink to the Terms of Use.[13]

The applicable versions of these three documents (i.e., the Cookie Policy, the Privacy Policy, and the Terms of Use), given Plaintiff's alleged use of the site from September 2022 to July 2023, Compl. ¶ 5, include the following relevant provisions:

- The Cookie Policy notifies the user that Themis "may use web beacons (also called web bugs, pixel tags, clear GIFS) to collect and aggregate data (such as the number of

---

[7] Sass Decl. ¶ 12.

[8] *Id.* ¶ 18.

[9] *Id.* ¶¶ 13, 19.

[10] *See* Themis Website; *see also* Sass Decl. ¶ 8 & Ex. D (reproducing Cookie Banner). The only Themis webpages on which the Cookie Banner does not appear are the Cookie Policy, Privacy Policy, and Terms of Use. *Id.* ¶ 10.

[11] Sass Decl. ¶¶ 8, 9.

[12] *Id.* ¶ 8.

[13] *Id.* ¶ 9.

visitors)," and that the user "can restrict, block or remove cookies" through web browser settings.[14]

- The Privacy Policy informs the user that Themis "may share personal information with . . . [t]hird-party service providers," including "analytics" providers and "website management, information technology and related infrastructure" providers, and it further notes that the user can "[o]pt-out of use of your personal information" or "[d]elete personal information" by "contacting us" at a customer service email address.[15]

- The Terms of Use provides that "[a]ny communications . . . that you . . . transmit through the Portal, including data, content, questions, comments, or suggestions . . . will be treated as non-confidential and non-proprietary," and additionally states that the Terms of Use "and the Privacy Policy constitute the entire agreement between you and Themis."[16]

### II. Plaintiff Brings VPPA and CIPA Claims Against Themis.

On March 12, 2024, Plaintiff filed the Complaint against Themis, alleging violations of the Video Protection Privacy Act ("VPPA"), 18 U.S.C. § 2710, and two sections of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 631(a) (the "CIPA wiretap provision") & 632 (the "CIPA eavesdropping provision"). Plaintiff alleges that she enrolled in a paid Themis bar preparation course in September 2022; that she accessed legal-educational content on the Themis Website, including video content; and that "[u]nbeknownst to Plaintiff, and without her consent, Defendant was sharing Plaintiff's video watching activity and her [personally identifiable information] with Facebook through its use of the [Meta] Pixel." Compl. ¶ 5.

## LEGAL STANDARD AND MATERIALS TO BE CONSIDERED BY COURT

Plaintiff bears the burden of establishing jurisdiction and a plausible claim to relief based on the allegations in the Complaint taken as true and any additional materials incorporated by

[14] *See* https://www.themisbar.com/cookie-policy; *see also* Sass Decl. ¶ 5 & Ex. A (identifying and reproducing applicable Cookie Policy).

[15] *See* https://web.archive.org/web/20220812064035/https://www.themisbar.com/privacy-policy; *see also* Sass Decl. ¶ 6 & Ex. B (identifying and reproducing applicable Privacy Policy).

[16] *See* https://www.themisbar.com/terms; *see also* Sass Decl. ¶ 7 & Ex. C (identifying and reproducing applicable Terms of Use).

reference in the Complaint or subject to judicial notice.

## I. Plaintiff bears the burden to establish jurisdiction and a plausible claim.

On a motion to dismiss, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met," *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014), and that the complaint "state[s] a claim to relief that is plausible on its face," *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (cleaned up). To determine whether the plaintiff has met her burden, the Court "accept[s] as true the well-pleaded factual allegations in the complaint" but "do[es] not credit legal conclusions." *Id.* Further, when an exhibit properly before the Court "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## II. The Complaint incorporates by reference the Themis Website.

When a complaint "reference[s] [the defendant's] website, including specifically [the plaintiff's] viewing of its video content," the website contents are "incorporated by reference" into it, and "'the defendant may then submit the [website] to the court without converting defendant's [motion to dismiss] to a motion for summary judgment.'" *Gardener v. MeTV*, 681 F. Supp. 3d 864, 867 n.2 (N.D. Ill. 2023) (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). Here, Plaintiff references the Themis Website throughout her Complaint, *see* Compl. ¶¶ 1, 3, 5, 6, 28 n.12 & n.13, 31, 34, 35, including references to the URLs for specific pages on the Themis Website, *see id.* ¶ 28 n.12 & n.13. Accordingly, the Court is not limited to the webpages that Plaintiff cites in her Complaint. Rather, the Court can and should consider the entire Themis Website, as it considers an entire contract when a complaint quotes only certain contractual provisions.

## III. Alternatively, the Court can take judicial notice of the Themis Website.

Even if the Court does not consider the Themis Website to be incorporated by reference, the Complaint's references to the Themis Website allow the Court to take judicial notice of it. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (holding that where a party refers to another party's website in its briefing, the district court may take judicial notice of the entire website). Because Plaintiff alleges that she used the Themis Website from September 2022 through July 2023, Compl. ¶ 5, the Court can take judicial notice of the Themis Website as publicly archived on the Wayback Machine during that time period,[17] and Themis asks that it do so. S*ee Hepp v. Ultra Green Energy Services, LLC*, 2016 WL 1073070, at *2 (N.D. Ill. Mar. 18, 2016) (taking judicial notice of webpages archived on the Wayback Machine).

# ARGUMENT

## I. The Court Lacks Subject-Matter Jurisdiction.

Standing, part of subject-matter jurisdiction, requires an injury-in-fact fairly traceable to the defendant's conduct. *See Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010). Plaintiff has suffered no injury-in-fact because there is no inherent privacy interest in legal education video watch history, let alone in the fact of having accessed unidentified legal education content. Further, any injury is not traceable to Themis because it was self-inflicted.

### A. Plaintiff has not suffered an injury-in-fact because there is no inherent privacy interest in legal education video watch history.

Injury-in-fact requires "a close historical or common-law analogue for the[] asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Importantly, the analogy must be for the ***plaintiff's injury***, not for the ***harm addressed by the statute***. *Id.* at 428-29. Thus, it is

[17] The Wayback Machine, https://web.archive.org/, is a digital archive of the World Wide Web founded by the Internet Archive, a nonprofit organization, which allows the user to go "back in time" to see how websites looked in the past.

not enough to say that the VPPA or CIPA has a historical analogue—Plaintiff must show that the injury alleged here, namely, the operation of the Themis Meta Pixel, has such an analogue.

Plaintiff cannot do so. The most plausible analogues for privacy-related statutes such as the VPPA and CIPA are "reputational harms, disclosure of private facts, and intrusion upon seclusion." *Id.* at 425. But any disclosure here was (a) only to a single recipient, *see Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023) (public disclosure of private facts must be to general public); (b) in an inoffensive manner, *see Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021) (intrusion upon seclusion must be "highly offensive to a reasonable person"); and (c) of non-sensitive information, *see Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979 (7th Cir. 2023) (defamation requires disclosure of "potentially embarrassing or intimate" information).

Even assuming ***recreational*** video watching habits are sensitive and their disclosure offensive, the same does not go for ***legal education*** video content. Rather, the activity of taking a bar prep course has a "generally public nature": the end goal is to appear in public to take the bar exam, hoping that one's name will appear on a publicly posted bar passage list. *See In re BPS Direct, LLC*, 2023 WL 8458245, at *19 (E.D. Pa. Dec. 5, 2023) (tracking pixel disclosing gun purchases was not an injury-in-fact because to consummate the gun purchase required appearing in public to pick up the gun at the store).[18]

Further, even if disclosure of legal education video watch history were an injury-in-fact, the Themis Website did not disclose Plaintiff's video watch history, but at most that she accessed unidentified legal education content. Specifically, the only disclosures alleged by Plaintiff are of her FID and URLs visited—and Themis Video URLs include only numerical identifiers

[18] Plaintiff alleges she prepared for the July 2023 California Bar Exam. Compl. ¶ 5. The State Bar of California publicly posts pass lists and information on licensed attorneys. *See* https://apps.calbar.ca.gov/exam/default.aspx (July 2024 Pass List); https://apps.calbar.ca.gov/attorney/Licensee/Detail/352435 (Plaintiff's licensure information).

meaningless to anyone not enrolled in the relevant Themis course. *See supra* pp. 2-3. Even if a person's legal education video watch history were somehow sensitive or offensive to disclose, the mere fact of a person having accessed legal education content is neither.

### B. Any injury suffered by Plaintiff is not fairly traceable to Themis's conduct because it was self-inflicted.

Separately, any injury suffered by Plaintiff was "entirely self-inflicted" and so "not fairly traceable to" Themis's conduct. *Parvati Corp.*, 630 F.3d at 514. Although Plaintiff alleges that Themis caused her injury by placing the Meta Pixel on the Themis Website, the public contents of the Themis Website, *see supra* pp. 3-5, contradict this allegation. Specifically, although Plaintiff alleges that the presence of the Themis Meta Pixel was "[u]nbeknownst to" her, she had ample notice—she was alerted to Themis's use of tracking cookies every time she visited the Themis Website until she clicked "ACCEPT" on the Cookie Banner, as well as both when she signed up for her Themis account and when she registered for any particular Themis course. *See supra* pp. 4-5. Thus, her injury was caused not by Themis's inclusion of the Meta Pixel on its website, but by her own voluntary decision to use the Themis Website despite being aware of the presence of tracking pixels on that website.

## II. Plaintiff Has Failed to State a VPPA Claim.

Plaintiff has failed to state a VPPA claim for multiple reasons. She has not plausibly alleged that (A) Themis is a "video tape service provider" ("VTSP"), 18 U.S.C. § 2710(b)(1); (B) Themis disclosed Plaintiff's "personally identifiable information" ("PII"), *id.*; or (C) that any disclosure made does not fall under the VPPA marketing safe harbor, *id.* § 2710(b)(2)(D). Further, applying the VPPA to Themis would violate the First Amendment.

### A. Themis is not a "video tape service provider" within the meaning of the VPPA.

"[I]n order to plead a plausible claim under" the VPPA, "a plaintiff must allege that . . . a

defendant is a [VTSP]." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiff has not plausibly alleged that Themis is a VTSP.

As Plaintiff alleges, Themis offers an "online bar exam preparation service" with content including "video lectures." Compl. ¶ 28. But rather than supporting an allegation that Themis is a VTSP, these facts compel the conclusion that Themis is ***not*** "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (defining VTSP). Although the reference to "similar audio visual materials" serves to keep the statute up to date with changes in video technology, Themis is not the digital equivalent of a videotape-rental, videotape-sale, or videotape-delivery company. Rather, Themis is a provider of legal education courses, with course content including not only videos, but also study guides, multiple-choice and essay questions, and more. *See supra* p. 2. Legal education companies already existed when the VPPA was enacted in 1988, and they were not within the mischief the statute aimed to address. *See* Compl. ¶ 10 (citing Senate Report for proposition that VPPA aimed to prevent public disclosure of private recreational habits). Further, to the extent that the phrase "similar audio visual materials" is ambiguous, constitutional avoidance counsels a narrow interpretation. *See infra* p. 13.

**B. Themis did not disclose Plaintiff's "personally identifiable information."**

Plaintiff has not plausibly alleged that Themis disclosed "information which identifies [Plaintiff] as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3) (defining PII); *see Mollett*, 795 F.3d at 1066 (pleading a VPPA claim requires alleging disclosure of PII). Although the Complaint does state that "[t]he combination of the PageView data and the PII from Facebook's cookies embedded on themisbar.com permits Facebook to see who watched what video," Compl. ¶ 34, the actual contents of the Themis Website, *see supra* pp. 2-3, undermine this conclusory allegation.

The Themis Meta Pixel does not disclose information such as the title or description of videos accessed, but only the URLs of webpages visited. *See Martin v. Meredith Corp.*, 657 F.Supp.3d 277, 285 (S.D.N.Y. 2023) (URL not watch history when it omits whether the page contains a video, how many, its/their title(s), and whether/which requested). Although Themis Video URLs do include content ID numbers, these numbers would be meaningless to anyone who had not first signed up for a Themis account and enrolled in, paid for (if applicable), identified, and launched the relevant course. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (for VPPA purposes, PII means "only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior" (cleaned up)). Because an ordinary person could not use a Themis Video URL to identify specific video content accessed, a disclosure of FID and Themis Video URL does not amount to a disclosure of video watch history.

### C. Any disclosure by Themis falls into the VPPA's marketing safe harbor.

To plead a plausible VPPA, a plaintiff must allege that the disclosure "was not authorized by" any VPPA safe harbor, including the marketing safe harbor. *Mollett*, 795 F.3d at 1066. Plaintiff has not plausibly alleged a VPPA claim because her factual allegations are "not only compatible with, but indeed . . . more likely explained by" a disclosure under the VPPA marketing safe harbor, rather than a VPPA violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). The marketing safe harbor bars VPPA liability if (i) the disclosure is solely of "names," "addresses," and the "subject matter" of covered video materials accessed; (ii) the disclosure is made "for the exclusive use of marketing goods and services directly to the consumer"; and (iii) the VTSP "has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D). The Complaint gives no reason to doubt that any disclosure satisfied all three requirements.

First, Plaintiff alleges that the Themis Meta Pixel disclosed her FID and URLs visited.

Compl. ¶¶ 32-34. But an FID is an address, under the ordinary meaning of that word.[19] And a Themis Video URL indicates only ***whether*** the page has a video on it, *see supra* pp. 2-3—at most, the video's "subject matter." Thus, the Complaint gives no reason to doubt that any disclosure was limited to items allowed under the marketing safe harbor.

Second, Plaintiff alleges that the purpose of the Meta Pixel is to market to Facebook users, Compl. ¶ 23, and that Themis uses the Meta Pixel in order "to build audiences on Facebook and retarget them for their advertising campaigns," *id.* ¶ 36. The Complaint mentions no other reason why Themis includes the Meta Pixel on its website. Thus, Plaintiff's allegations give no reason to doubt that any disclosure was "for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D).

Finally, Plaintiff alleges that she visited the Themis Website on numerous occasions to enroll for a bar prep course and access course content. Compl. ¶ 5. But the Themis Website provides every visitor a clear and conspicuous opportunity to prohibit disclosure. *See supra* pp. 3-5. Specifically, the Cookie Banner informs Plaintiff of the Themis Website's use of cookies, while also referring her to the Cookie Policy, Privacy Policy, and Terms of Use; the Privacy Policy notified Plaintiff that she could "[o]pt-out of use of your personal information" and "[o]bject to, limit, or restrict use of personal information," and the Cookie Policy further informed Plaintiff of a 'self-help' remedy for avoiding any unwanted disclosure—namely, altering her browser settings. Plaintiff's allegations compel the conclusion that she received sufficient opportunity to prohibit unwanted disclosure.

---

[19] *See, e.g.*, "address," n., def. 1(a), *Merriam-Webster*, https://www.merriam-webster.com/dictionary/address#dictionary-entry-2, accessed April 24, 2024 ("a place where a person or organization may be communicated with"); *id.* def. 2(b) ("a series of usually alphanumeric characters that specifies the storage location (as on a network or in a computer's memory) of particular information").

### D. The VPPA's application to Themis violates the First Amendment.

The application of the VPPA to Themis unconstitutionally prohibits commercial speech without being narrowly tailored to serve a substantial governmental interest. The operation of the Themis Meta Pixel in transmitting information to Meta is commercial speech. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 562 (2011) (transmission of marketing data is commercial speech). Restrictions on commercial speech must (1) "directly advance[] a substantial government interest" and (2) be "drawn to achieve that interest" such that "the resulting burdens placed on speech" are "proportional" to the legislature's ends. *Id.* at 572. Although the VPPA's asserted purpose was to "preserve personal privacy," *Saunders v. Hearst Television, Inc.*, 2024 WL 126186, at *5 (D. Mass. Jan. 11, 2024) (quoting S. Rep. 100-599 at 1), it does so only when applied to disclosures of ***recreational*** video watch history. Because there is no privacy interest in ***legal education*** video watch history, *see supra* p. 7, there is also no substantial government interest in preserving such privacy—and no good reason why the VPPA must extend to persons like Themis.

## III. Plaintiff Has Failed to State a CIPA Wiretapping Claim.

Plaintiff has failed to state a CIPA wiretapping claim because she has plausibly alleged neither that the "contents" of any communication were intercepted by Meta (with Themis's aid), nor that any such interception was "without [her] consent." Cal. Penal Code § 631(a) (requiring both of these for a CIPA wiretapping claim).

### A. No communication contents were intercepted by Meta.

Plaintiff has not plausibly alleged that Meta intercepted any communication contents. Although the Complaint does recite that Meta intercepted communications between Plaintiff and Themis, Compl. ¶ 55, the actual content of the Themis Website, *see supra* pp. 2-3, undermines this conclusory allegation. The CIPA wiretapping provision distinguishes "contents" from "record information," and intercepting "record information" does not violate CIPA. *Graham v. Noom,*

*Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). But the Themis Meta Pixel allegedly discloses only FID and URL visited—both of which are mere record information. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (FIDs and URLs are mere record information); *see., e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (URLs are record information unless they are "full-string, detailed URLs" including sensitive information); *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873 at *15 (D.N.J. July 2, 2014) (even URLs containing video titles are "static descriptions" not contents). Because FIDs and URLs are not communication contents, their disclosure does not amount to a CIPA wiretapping violation.

**B. Plaintiff consented to any interception that did take place.**

Plaintiff also has not plausibly alleged that any interception of communication contents was nonconsensual. Although the Complaint does state that the alleged interception was "without her consent," Compl. ¶ 5, the public contents of the Themis website, *see supra* pp. 3-5, rebut this conclusory allegation. To enroll in a Themis course requires clicking an "ENROLL" button placed directly above the text: "By clicking enroll I agree to the" Terms of Use. This agreement is enforceable. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016) (clickwrap is enforceable "as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement"). The Terms of Use expressly provide that any communications between the user and Themis are "non-confidential." Further, the Terms of Use incorporate by reference the Privacy Policy, which provides that Themis may "share personal information with . . . third parties." If, as Plaintiff alleges, she enrolled in a Themis course, Compl. ¶ 5, she necessarily consented to any interception that took place. Her conclusory allegation to the contrary is not plausible.

**IV. Plaintiff Has Failed to State a CIPA Eavesdropping Claim.**

Plaintiff has failed to state a CIPA eavesdropping claim because she has not plausibly

alleged (A) an act of "eavesdropping" or "recording" attributable to Themis; (B) a "confidential" communication; (C) an "electronic amplifying or recording device," or (D) a lack of consent on Plaintiff's part. Cal. Penal Code § 632 (requiring each of these for a CIPA eavesdropping claim).

**A. Themis did not eavesdrop upon or record anything.**

Plaintiff has not alleged that Themis engaged in ***any*** action relating to eavesdropping or recording. Indeed, the Complaint's recitation of Plaintiff's CIPA eavesdropping claim alleges only that Meta took certain actions, while attributing no activity to Themis. *See* Compl. ¶¶ 61-67. Accordingly, Plaintiff has failed to state a CIPA eavesdropping claim against Themis.

**B. The communications at issue were not confidential.**

Plaintiff has not plausibly alleged that the relevant communications were confidential. Under California law, a communication is confidential when the participant has an "objectively reasonable expectation that the [communication] would not be recorded." *CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, 305 F. Supp. 3d 864, 883 (N.D. Ill. 2018). Here, Plaintiff asserts such a reasonable expectation of privacy based solely on the applicability of the VPPA to the operation of the Themis Meta Pixel. Compl. ¶ 66. Since Plaintiff has failed to state a VPPA claim, *see supra* pp. 9-13, she has also failed to state a CIPA eavesdropping claim.

**C. The Meta Pixel is not an electronic amplifying or recording device.**

Plaintiff has not plausibly alleged that Themis made use of any "electronic amplifying or recording device." Although Plaintiff alleges that Themis used the Meta Pixel, Compl. ¶ 29, a tracking pixel is software and thus not a "device" within the meaning of CIPA. *See, e.g.*, *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019). And although Plaintiff alleges that ***Meta*** used servers, Compl. ¶ 59, CIPA liability requires the defendant to be the one using the device, *see, e.g.*, *Doe v. Microsoft Corp.*, 2023 WL 8780879 at *8 (W.D. Wash. Dec. 19, 2023). Plaintiff has not alleged any use of servers ***by Themis***, and thus has not plausibly alleged

any use by Themis of an electronic amplifying or recording device.

**D. Plaintiff consented to any eavesdropping or recording that did take place.**

Just as Plaintiff has not plausibly alleged any interception without her consent, *see supra* p. 14, she has not plausibly alleged any eavesdropping or recording without her consent.

## CONCLUSION

For these reasons, Themis asks the Court to grant its motion to dismiss Plaintiff's suit for lack of subject-matter jurisdiction, or, in the alternative, to dismiss Plaintiff's suit for failure to state a claim upon which relief can be granted.

Respectfully submitted,

s/ Joshua D. Lee
Joshua D. Lee
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607-7932
Telephone: (312) 964-7800
Facsimile: (214) 694-7799
josh.lee@nortonrosefulbright.com

James V. Leito IV*
Jackie Baker*
Joseph Simmons*
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
james.leito@nortonrosefulbright.com
jackie.baker@nortonrosefulbright.com
joseph.simmons@nortonrosefulbright.com

**Pro Hac Vice Application Forthcoming*

*Counsel for Defendant Themis Bar Review, LLC*