**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SOPHIA SAHAGÚN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THEMIS BAR REVIEW, LLC,<br><br>Defendant. | Civil Action No. 1:24-cv-02065 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ... 1

LEGAL STANDARD ... 2

ARGUMENT ... 2

I. DEFENDANT'S DECLARATION SHOULD BE DISREGARDED AND ITS REQUEST FOR JUDICIAL NOTICE DENIED ... 2

A. Defendant's Website is Not a Proper Subject for Incorporation by Reference or Judicial Notice ... 3

B. Documents From the Wayback Machine Are Not Subject to Judicial Notice or Incorporation by Reference ... 5

C. The Douglas Declaration's Narrative is Not Properly Before The Court on a Motion to Dismiss ... 6

II. PLAINTIFF HAS STANDING ... 7

A. Plaintiff Has Adequately Pled Injury-in-Fact ... 7

B. Defendant's "Self-Inflicted Injury" Argument is Premature and Unsupported ... 8

III. THE COMPLAINT STATES A VPPA CLAIM ... 9

A. Themis is a Video Tape Service Provider ("VTSP") ... 9

B. Plaintiff Adequately Alleges That Her PII Was Disclosed ... 10

C. Themis Has No "Safe Harbor" ... 11

D. The VPPA Does Not Abridge Defendant's First Amendment Rights ... 13

IV. PLAINTIFF STATES A CLAIM UNDER CIPA §§ 631 & 632 ... 13

A. Plaintiff Adequately Alleges That The Pixel Relays Content ... 13

B. Plaintiff's Allegations Regarding Consent Are Sufficient ... 14

V. DEFENDANT CAN BE HELD LIABLE UNDER CIPA § 632 ... 15

A. Plaintiff's Claim Encompasses Defendant ... 15

B. Plaintiff Alleges That The Communications Were Confidential Within The Meaning of CIPA ... 16

C. The Facebook Pixel is a "Device" Under CIPA ... 17

VI. CONCLUSION ... 18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Addi v. IBM*,
2024 WL 2802863 (S.D.N.Y. May 31, 2024) .......... 7

*Ambrose v. Boston Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......... 9

*Austin-Spearman v. AMC Network Entertainment LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) .......... 8

*Belozerov v. Gannett Co.*,
2022 WL 17832185 (D. Mass Dec. 20, 2022) .......... 9, 11

*Boelter v. Hearst Commc'ns*, Inc.,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) .......... 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 14, 17

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .......... 3

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .......... 15

*Collins v. Pearson Educ., Inc.*,
2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) .......... 7

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) .......... 14

*Czarnionka v. Epoch Times Ass'n, Inc.*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) .......... 11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 17, 18

*Facebook, Inc. v. Teachbook.com LLC*,
819 F. Supp. 2d 764 (N.D. Ill. 2011) .......... 2, 4, 7

*Felty v. Driver Solutions, LLC*,
2013 WL 5835712 (N.D. Ill. Oct. 30, 2013) .......... 5

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023) .......... 3

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 13

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ........ 16

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. Nov. 29, 2016) ........ 15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 17, 18

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 10, 11, 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 14

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016) ........ 11

*In re Vizio, Inc., Consumer Privacy Litigation*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 9, 10

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 13

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ........ 15, 16

*Laws v. Walmart Inc.*,
2024 WL 1579274 (S.D. Ill. Apr. 11, 2024) ........ 2

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ........ 10

*Levenstein v. Salafsky*,
164 F.3d 345 (7th Cir. 1998) ........ 4

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 15

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........ 11

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 17

*My Health, Inc. v. Gen. Elec. Co.*,
2015 WL 9474293 (W.D. Wis. Dec. 28, 2015) ........ 3, 4, 6

*RAM Iron & Metal, Inc. v. Exeon Processors, LLC*,
2023 WL 3478831 (N.D. Ind. May 16, 2023) ........ 9

*Saunders v. Hearst Television, Inc.*,
2024 WL 126186 (D. Mass. Jan. 11, 2024) ........ 13

*Specht v. Google Inc.*,
747 F.3d 929 (7th Cir. 2014) ........ 6

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ........ 7

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021) ........ 7

*Turner v. Nuance Communications, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) ........ 15

*United States v. Bansal*,
663 F.3d 634 (3d Cir. 2011) ........ 5, 6

*United States v. Kmart Corp.*,
2014 WL 11696711 (S.D. Ill. Sept. 26, 2014) ........ 5

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ........ 16

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) ........ 16

*Walton v. EOS CCA*,
2017 WL 9531997 (S.D. Ind. July 24, 2017) ........ 5

*Westfield Ins. Co. v. Sheehan Const. Co.*,
575 F. Supp. 2d 956 (S.D. Ind. 2006) ........ 2

*Yershov v. Gannet Satellite Info. Network, Inc.*,
204 F. Supp. 3d 353 (D. Mass. 2016) ........ 8, 9

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........ 1, 11

**STATUTES**

18 U.S.C. §§ 2510-2523 ........ 17

18 U.S.C. § 2710 ........ 1

18 U.S.C. § 2710(a) ........ 9, 11

18 U.S.C. § 2710(b) .......... 1, 6, 12

Cal. Penal Code § 631 .......... 2, 13, 16

Cal. Penal Code § 632 .......... passim

**RULES**

Fed. R. Evid. 201 .......... 5

**OTHER AUTHORITIES**

S. Rep. No. 100-599 .......... 1

## INTRODUCTION

In 1988, Congress passed the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), "to preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988). The VPPA was the latest in "a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals." *Id.*, at 2. "To effectuate this purpose, Congress in the VPPA created a civil remedy against a 'video tape service provider' for 'knowingly disclosing, to any person, personally identifiable information concerning any consumer of such provider.'" *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016) (quoting 18 U.S.C. § 2710(b)(1)). Defendant is one such "video tape service provider" who violated the VPPA.

Defendant owns and operates a website, themisbar.com, that uses code called the Facebook Tracking Pixel to track what videos its users watch, and to then send that data to Facebook, along with users' personally identifiable information ("PII"). Complaint ("Compl.") ¶ 3. The website transmits enough PII about the users that an ordinary person could determine who the user is and what videos they watched. Compl. ¶¶ 29-34. Users like Plaintiff and other members of the putative Class did not consent to the disclosure of such information when they used Defendant's website. *Id.* ¶¶ 5, 47, 55, 58, 67. And because the disclosed information is "reasonably and foreseeably likely to reveal which … videos [Plaintiff and Class members] ha[ve] obtained," Defendant's disclosures violate VPPA. *Yershov*, 820 F.3d at 486.

Defendant's Motion to Dismiss ("MTD") is unavailing. First, Defendant improperly attempts to submit outside documents to dispute the allegations of the Complaint. Second, Plaintiff has adequately alleged standing under the VPPA, and sufficiently alleges a violation of the VPPA. Defendant fails to establish that it is subject to any "safe harbor" exception to the

VPPA. Finally, Plaintiff has sufficiently stated a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code Sections 631(a) and 632. CIPA prohibits wiretapping and eavesdropping or recording an individual's communications without consent.

For the following reasons, Defendant's Motion should be denied in its entirety.

## LEGAL STANDARD

"District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Laws v. Walmart Inc*., 2024 WL 1579274, at *1–2 (S.D. Ill. Apr. 11, 2024). Furthermore, "in essence, the standard for a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is the same as the standard for a 12(b)(6) motion to dismiss." *Westfield Ins. Co. v. Sheehan Const. Co*., 575 F. Supp. 2d 956, 958 (S.D. Ind. 2006).

## ARGUMENT

### I. DEFENDANT'S DECLARATION SHOULD BE DISREGARDED AND ITS REQUEST FOR JUDICIAL NOTICE DENIED

As a general rule, "a motion under Rule 12(b)(6) stands or falls based on the allegations in the complaint." *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 773 (N.D. Ill. 2011). However, to controvert the Complaint's allegations, Defendant has submitted the Declaration of Ellen Sass Douglas (Docket No. 15-1),[1] attaching numerous documents that purport to be screenshots of several versions of portions of Defendant's website. Although Defendant urges the Court either to accept this submission as having been incorporated by reference into the Complaint or to take judicial notice of it, MTD at 6-7, it does not meet the requirements for incorporation by reference or judicial notice. Accordingly, Plaintiff

[1] Hereinafter referred to as the "Douglas Declaration" or "Douglas Decl."

respectfully submits it is improper for the Court to consider any part of these documents.

### A. Defendant's Website is Not a Proper Subject for Incorporation by Reference or Judicial Notice

In certain circumstances, a court may deem a document to have been incorporated by reference if it is mentioned in the complaint but not attached. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Defendant cites a footnote in *Gardener v. MeTV*, 681 F. Supp. 3d 864, 867 (N.D. Ill. 2023) for the proposition that, because the Complaint refers to Plaintiff's viewing of videos from its website, the Court may consider Defendant's website in this motion under the doctrine of incorporation by reference.

The *Gardener* footnote states: "Plaintiffs referenced MeTV's website, including specifically their viewing of its video content, in their complaint, such that its contents can be incorporated by reference." 681 F. Supp. 3d at 867 n.2. The decision does not explain what the complaint's references were or what Defendant submitted to the court. Furthermore, the court did not actually reach any issues where the website's contents were relevant, because it held that the plaintiff was not a "subscriber" under VPPA.

This dictum is too slender a reed to support Defendant's submission of 9 pages of declarant testimony and 100 printed pages of several versions of Themis's website. In *My Health, Inc. v. Gen. Elec. Co*., 2015 WL 9474293, at *3-4 (W.D. Wis. Dec. 28, 2015), the district court declined to consider the General Electric website under the incorporation by reference doctrine, which it characterized as a "narrow exception" to the general rule that no evidence outside the complaint is to be considered on a motion to dismiss under Rule 12. *Id.* at *4. Observing that the exception typically applies to references to specific, undisputed documents, such as a contract, the court held:

> The complaint does refer to GE's website, which is available at a specific domain name. But that website is not the equivalent of a single document unequivocally identified and cited in a complaint. A website, particularly a complex one like GE's, is a dynamic collection of documents and data that

> changes over time. A reference to the domain name at which the website can be found is not a reference to a specific document any more than a reference to www.newyorktimes.com is a reference to a specific article. The complaint does not reference the archived screenshots on which GE now relies, and the court will not consider the documents as "incorporated by reference."

*Id*. at *4.

Importantly, many of the pages are not even versions that existed when Plaintiff used the website. Douglas Decl. ¶ 6, Exhibit B-1. And even if they were, they all relate to Defendant's presumed affirmative defense of consent, not the claims in the Complaint. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (While "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim," ... "this is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment, and the defendants' perfunctory arguments for the centrality of these documents are unpersuasive."). These are not the circumstances contemplated under the incorporation by reference doctrine.

Here, while the Complaint refers to the Themis website, it does not refer to a *single page* attached to the Douglas Declaration. Nor has Defendant even attempted to show that any of them are "central" to Plaintiff's claims. *See Teachbook.com*, 819 F. Supp. 2d at 773 ("While the nature of Facebook's website and business is likely to play a role in this case, Teachbook has not demonstrated that this particular portion of Facebook's website is central to Facebook's claim. Indeed, allowing Teachbook to cherry pick portions of Facebook's website to introduce via a motion to dismiss simply because the complaint implicates the two websites would convert an examination of the complaint in to full-blown summary judgment analysis. This result would vitiate an otherwise narrow exception to the general rule that a motion under Rule 12(b)(6) stands or falls based on the allegations in the complaint.").

Nor is Defendant's website subject to judicial notice. Under Federal Rule of Evidence 201, a court may take judicial notice only of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). "Judicial notice is generally reserved for the acknowledgement of matters of 'common knowledge.'" *Walton v. EOS CCA*, 2017 WL 9531997, at *7 (S.D. Ind. July 24, 2017).

The website does not meet this standard. "The Internet contains a wide variety of information with varying levels of reliability, and a court is not required to take judicial notice of a website's content." *United States v. Kmart Corp.*, 2014 WL 11696711, at *2 (S.D. Ill. Sept. 26, 2014) (declining to take judicial notice of corporate websites); *see also Felty v. Driver Solutions, LLC*, 2013 WL 5835712, at *3 (N.D. Ill. Oct. 30, 2013) ("Due to the evolving nature of websites, this Court is neither required nor inclined to take judicial notice of any website material at this time.").

### B. Documents From the Wayback Machine Are Not Subject to Judicial Notice or Incorporation by Reference

The Douglas Declaration attaches documents retrieved from the Wayback Machine, an internet archive website. *See* Exhibits A-2, A-3, B-2, B-3, C-2, C-3, D-2, D-3, D-4, E-2, E-3, E-4, F-1, G-2, and G-3. Douglas Decl. ¶ 1, footnotes 1, 2, 4-8, 10. They are not properly authenticated and cannot be considered. In *United States v. Bansal*, 663 F.3d 634, 667-68 (3d Cir. 2011), the Third Circuit upheld the trial court's admission of Wayback Machine screenshots because, "[t]o authenticate that the screen-shot was what it purported to be, the government called a witness to testify about how the Wayback Machine website works and how reliable its contents are. The witness also compared the screenshots with previously authenticated and admitted images from Bansal's website and concluded, based upon her personal knowledge, that

the screenshots were authentic. This was evidence sufficient to support a finding that the screenshots were what they purported to be, rendering them admissible under Rule 901(b)(1)." 663 F.3d at 668 (cleaned up). The Seventh Circuit followed *Bansal* in *Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014) ("[T]he district court reasonably required ... authentication by someone with personal knowledge of reliability of the archive service from which the screenshots were retrieved.").

Defendant has done none of this. *See* Douglas Decl. The Court should not take judicial notice of the disputed exhibits, nor should it accept them as incorporated by reference. *See My Health, Inc. v. Gen. Elec. Co.*, 2015 WL 9474293, at *3-4 (W.D. Wis. Dec. 28, 2015) (where unauthenticated Wayback Machine screenshots were proffered, "The court will not take judicial notice of information established by submissions that require authentication. … it is not so unequivocally reliable that the court should take judicial notice of it.").

### C. The Douglas Declaration's Narrative is Not Properly Before The Court on a Motion to Dismiss

The Douglas Declaration does not only attach documents. It also includes considerable amounts of testimony whereby the declarant asserts supposed facts that are well beyond what even the most liberal Rule 12 jurisprudence would allow. *See, e.g.*, ¶¶ 21-23. There are many more such examples throughout the declaration. *See, e.g.*, Douglas Decl. ¶¶ 9-10, 12-17, 19-20 (purporting to describe the operation of the website). This testimony is not subject to consideration on a Rule 12 motion.[2]

---

[2] Defendant does not argue consent for Plaintiff's VPPA claim, only Plaintiff's CIPA claim. But even if the Court were to consider the Douglas Declaration and its exhibits, its dubious disclosures would have no bearing on Plaintiff's VPPA claim. Under the VPPA, Defendant may disclose a consumer's PII only if it obtained "informed, written consent of the consumer that [] is <u>in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer</u>[.]" *See* 18 U.S.C. 2710 (b)(2)(B)(i) (emphasis added). None of the relevant Douglas exhibits comport with this requirement. *See, e.g.*, Douglas Decl. Exs. A1-A3 B1-B3, C1-C3.

## II. PLAINTIFF HAS STANDING

### A. Plaintiff Has Adequately Pled Injury-in-Fact

Themis argues Plaintiff has not suffered injury-in-fact because "there is no inherent privacy interest in legal education video watch history." MTD at 7. Themis is incorrect. Numerous cases hold that consumers have a cognizable privacy interest in the videos that they watch. Recently, in *Addi v. IBM*, 2024 WL 2802863 (S.D.N.Y. May 31, 2024), the court ruled that the plaintiff had adequately alleged injury-in-fact. The *Addi* court cited the same case Defendant relies on, *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021), explaining:

> The Supreme Court has held that "disclosure of private information" is an intangible harm traditionally recognized as actionable in American courts. *TransUnion*, 141 S. Ct. at 2190 … In light of this precedent, this Court has consistently found that "because the VPPA creates a specific right to relief for disclosures made in violation of the statute, a plaintiff asserting claims under the VPPA need only assert [her] information was wrongfully disclosed to have asserted an injury in fact supporting Article III standing."

2024 WL 2802863 at *3. The same holds true here.

Similarly, in *Collins v. Pearson Educ., Inc.*, --- F. Supp. 3d ---, 2024 WL 895316 (S.D.N.Y. Mar. 1, 2024), plaintiff alleged that Pearson (which, like Themis, is a test preparation company) shared his personally identifiable information and his video-watching activity with Facebook through its use of the Facebook Tracking Pixel. The court held that having alleged that "Pearson, as an across-the-board practice, disclosed to Facebook Collins' Facebook ID, and the titles and URLs of each of the videos and other services he requested or obtained from Pearson's website," the complaint adequately alleged concrete injury. *Id.* at *3. That court also cited *TransUnion* in holding that the allegations that Pearson "intentionally disclosed [Collins'] personally identifiable information" and his "video-watching activity" to Facebook "without [his] knowledge or consent" via the Pixel, were sufficient. *Id.* *See also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("By alleging that Redbox disclosed

their personal information in violation of the VPPA, Sterk and Chung have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress.").

Here, Plaintiff's allegations are more than sufficient to allege injury-in-fact. Specifically, Plaintiff alleges:

- she "watched numerous lecture videos on themisbar.com. Unbeknownst to Plaintiff, and without her consent, Defendant was sharing Plaintiff's video watching activity and her PII with Facebook through its use of the Facebook Tracking Pixel. Indeed, Plaintiff's Offsite Activity Report on facebook.com shows that Defendant disclosed such data to Facebook on 400 occasions," Compl. ¶ 5;
- "Themis's website hosts the Facebook Tracking Pixel and transmits PageView data to Facebook, which includes the Uniform Resource Locators ("URL") dedicated solely to Themis video lectures," Compl. ¶ 29;
- "This event data permits an ordinary person to identify what video an individual, has watched," Compl. ¶ 30;
- "The combination of the PageView data and the PII from Facebook's cookies embedded on themisbar.com permits Facebook to see who watched what video," Compl. ¶ 34;
- "Defendant knowingly disclosed Plaintiff's PII and video viewing activity because it used that data to build audiences on Facebook and retarget them for their advertising campaigns," Compl. ¶ 46; and
- "Plaintiff and class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII or video viewing activity to third parties." Compl. ¶ 47.

These allegations establish injury-in-fact under Article III. *See Austin-Spearman v. AMC Network Entertainment LLC*, 98 F. Supp. 3d 662, 665 (S.D.N.Y. 2015) ("[T]he VPPA creates a right to the privacy of one's video-watching history, the deprivation of which—through wrongful disclosure, or statutory violation, alone—constitutes an injury sufficient to confer Article III standing."); *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 362 (D. Mass. 2016) ("The intangible harm allegedly suffered by Yershov from Gannett's alleged disclosure of his PII is a concrete injury in fact.").

### B. Defendant's "Self-Inflicted Injury" Argument is Premature and Unsupported

Defendant relies on the Douglas Declaration and its exhibits to argue that Plaintiff was on notice that Themis uses "tracking cookies." MTD at 9. As discussed above, Defendant is not

permitted to controvert the allegations of the Complaint with its own purported evidence. Furthermore, even if the Court were to consider these documents, Defendant does not show that Plaintiff was aware, or even on notice, of its use of the Facebook Pixel. Nor do Defendant's exhibits sufficiently explain how the Facebook Pixel operates on its website. *Id.* At worst, this is a factual dispute that cannot be resolved on a motion to dismiss. *See RAM Iron & Metal, Inc. v. Exeon Processors, LLC*, 2023 WL 3478831, at *4 (N.D. Ind. May 16, 2023) (collecting cases).

## III. THE COMPLAINT STATES A VPPA CLAIM

Themis's arguments for dismissal have been rejected numerous times by other courts. The Court should do the same.

### A. Themis is a Video Tape Service Provider ("VTSP")

A VTSP means "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. 2710(a)(4). The phrase "similar audio visual materials" means any medium, tangible or intangible, through which pre-recorded video content can be played. *See In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("Congress's use of the phrase 'similar audiovisual materials' indicates that the definition is medium neutral; the defendant must be in the business of delivering content, but that content need not be in a particular format.").

Plaintiffs allege that Themis "has created, hosted, and delivered hundreds of videos on its website[.]" Compl. ¶ 42. That is sufficient. *See Belozerov v. Gannett Co., Inc.*, 2022 WL 17832185, at *3 (D. Mass. Dec. 20, 2022) (agreeing with the plaintiff's view that "computer files containing video content . . . are 'similar audio visual materials'"); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022) (finding the plaintiff plausibly pled that the defendant "'creates, hosts, and disseminates hundreds, if not

thousands, of videos'" and, therefore, was a video tape service provider); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335 (N.D. Ga. 2022) (holding that "WebMD is a video tape service provider" because the plaintiff "alleges that WebMD is engaged in the business of delivering prerecorded audio-visual materials to consumers via its e-newsletter and its website").

Themis argues that, even if its video materials constitute "similar audio visual materials," it is not "engaged in the business" of delivering those materials but rather of providing legal education courses. MTD at 10. But "[I]n this context, 'business' connotes 'a particular field of endeavor,' i.e., a focus of the defendant's work." *Vizio*, 238 F. Supp. 3d at 1221; *see also In re Facebook, Inc.*, 402 F. Supp. 3d at 799 (observing that if an entity "'regularly delivers' video content to users and maintains a cache of videos and visual materials," then it is "plausible to conclude" that the entity "engages in the business of delivering audio visual materials, and that its business is 'significantly tailored to serve that purpose'").

Along with "creat[ing], host[ing], and deliver[ing] hundreds of videos," Compl. ¶ 42, Themis "describes its online bar exam preparation service as providing "[o]n demand video lectures taught by world class professors." *Id.* ¶ 28. Themis provides users with video lectures on every bar exam topic "in concise, 20-minute chapters." *Id.* Themis is thus "engaged in the business" of delivering video content to consumers because it is substantially involved in, and its website is significantly tailored to, delivery of such content. *Vizio*, 238 F. Supp. 3d at 1221.

### B. Plaintiff Adequately Alleges That Her PII Was Disclosed

Defendant also disputes that it disclosed Plaintiff's PII because, according to Defendant, the Pixel does not disclose the title and description of videos accessed, only the URLs of webpages visited. MTD at 11. Defendant misses the point. The URLs, which uniquely identify videos watched—together with users' Facebook IDs—constitute PII.

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Circuit courts have interpreted this definition differently. *Compare In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 267 (3d Cir. 2016) (defining PII as "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior"), with *Yershov,* 820 F.3d at 486 (defining PII as "information reasonably and foreseeably likely to reveal which … videos [plaintiff] has obtained"). The allegations here satisfy both interpretations.

Plaintiff alleges that Themis transmits PageView data to Facebook via the Pixel, and that the data includes URLs dedicated solely to Themis video lectures, permitting an ordinary person to identify what video the individual has watched. Compl. ¶¶ 29-30. Furthermore, if a person is logged into Facebook and watches a video on Themis, the Pixel transmits their Facebook ID ("FID"), which is personally identifiable information. Compl. ¶¶ 32-33; *Belozerov v. Gannett Co.*, 2022 WL 17832185, at *4 (D. Mass Dec. 20, 2022) ("A Facebook ID is a unique identifier that allows anyone to discover the user's identity."). The combination of the PageView data and the PII from Facebook's cookies permits Facebook to see who watched what video. *Id.* ¶ 34. As a result, Defendant disclosed Plaintiff's and class members' PII to a third party. Compl. ¶ 44; *see also Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) ("By installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within."). Plaintiff therefore states a claim under the VPPA.

**C. Themis Has No "Safe Harbor"**

Themis claims it cannot be liable due to the VPPA's "marketing safe harbor." Defendant is wrong. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015), the one case that Themis

cites in support, merely stands for the proposition that a video service provider may disclose PII to the consumer herself.

Critically, the safe harbor in 18 U.S.C. § 2710(b)(2)(D) only applies "if the disclosure is solely of the names and addresses of consumers and if" and "the disclosure does not identify the title, description, or subject matter of any video [] material[.]" That is inapplicable here because the Complaint alleges that Defendant discloses far more than "names and addresses of consumers." *See* Compl. ¶¶ 29-34 (describing how Defendant sends Facebook users' PageView data and Facebook ID, enabling Facebook "to see who watched what video").

This goes beyond the permissible scope of the exception, even for marketing purposes.[3] *See* 18 U.S.C. §2710(b)(2)(D)(ii). The Complaint alleges that Defendant's disclosure to Facebook is not "for the exclusive use of marketing goods and services directly to the consumer." Rather, Facebook processes and analyzes the actions users take on the website and assimilates it into datasets, which may consist of audiences who are not the existing customers, but have similar qualities. *See* Compl. ¶¶ 24, 25. The Complaint contrasts this type of advertising with direct advertising to existing customers. *Id.*

If the Exhibits to the Douglas Declaration were considered on this motion, Plaintiff would also vigorously dispute that Themis has provided "the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. §2710(b)(2)(D)(i). *See, e.g.*, Douglas Decl., Exh. B-2. (inconspicuous opt-out information located on fourth page of document). At minimum, it is a factual dispute premature for resolution on a motion to dismiss.

[3] Plaintiff respectfully submits the Court need not reach the "marketing purposes" analysis under 18 U.S.C. § 2710(b)(2)(D)(ii) because Defendant did not disclose "solely the names and addresses of consumers" (*see* § 2710(b)(2)(D)), nor did it provide consumers "with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure[.]" *Id.* § 2710(b)(2)(D)(i). Absent compliance with these first two prongs, the marketing exception is inapplicable.

### D. The VPPA Does Not Abridge Defendant's First Amendment Rights

Defendant's First Amendment argument is specious. "[T]he court is aware of no cases in any circuit—and Hearst cites none—holding that the VPPA violates the First Amendment." *Saunders v. Hearst Television, Inc.*, 2024 WL 126186, at *4–6 (D. Mass. Jan. 11, 2024). Drawing a false distinction between "recreational" and "legal education" videos, Themis argues that the VPPA claim must be dismissed because it should apply only to the former. MTD at 13. As explained above, the VPPA makes no distinction between recreational and educational videos for its purposes. Furthermore, Themis consistently overstates the meaning of "privacy." Under the VPPA, as discussed in Section III.B., private information is PII. As the court in *Boelter v. Hearst Commc'ns*, Inc., 192 F. Supp. 3d 427, 452 (S.D.N.Y. 2016) concluded in upholding the analogous Michigan statute: "The statute brings within its ambit the individuals who sell those goods, restricting the reasons for which they can disclose the identifying information they collect about their customers. Preventing the disclosure of consumer data to third parties by sellers—those most likely to possess and collect that information—reduces the likelihood of consumers' private details becoming public." 192 F. Supp. 3d at 449. The *Boelter* analysis applies with equal force here.

## IV. PLAINTIFF STATES A CLAIM UNDER CIPA §§ 631 & 632

### A. Plaintiff Adequately Alleges That The Pixel Relays Content

Defendant incorrectly asserts that the Pixel does not collect communication "content." MTD at 13-14. Defendant's reliance on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) and *In re Zynga Privacy Litig*., 750 F.3d 1098 (9th Cir. 2014) for the proposition that the information Facebook intercepts is not "content" under CIPA is misplaced. According to Defendant, any URLs intercepted by Facebook contain only record information, not communications. MTD at 6-7, 20 n.10. Defendant is wrong.

A URL can contain the content of a communication where it includes information beyond basic identification and address information:

> The [Wiretap Act] broadly defines "content" to include "any information concerning the substance, purport, or meaning of [a] communication." "Contents" refers to the "intended message conveyed by the communication"—it does not include record information regarding the characteristics of the message that is generated in the course of the communication . . . . And while a URL that includes "basic identification and address information" is not "content," a URL disclosing a "search term or similar communication made by the user" "could constitute a communication" under the statute.

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (internal citations omitted); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("In *Facebook Tracking*, the Ninth Circuit held these 'full-string detailed URL[s]' are distinct from the IP addresses discussed in *Zynga Privacy*."); *Cousin v. Sharp Healthcare*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) (noting that the URLs in *Zynga* did not contain any personal information).

Here, Plaintiff alleges that Themis transmits PageView data to Facebook via the Pixel, and that the data includes URLs dedicated solely to Themis video lectures, permitting an ordinary person to identify what video the individual has watched. Compl., ¶¶ 29-30. Furthermore, if a person is logged into Facebook and watches a video on Themis, the Pixel transmits their Facebook ID, which is personally identifiable information. Compl., ¶¶ 32-33. The combination of the PageView data and the PII from Facebook's cookies permits Facebook to see who watched what video. *Id.* ¶ 34. Accordingly, the information relayed is more like the URLs in *In re Meta Pixel* than in the cases Defendant cites.

**B. Plaintiff's Allegations Regarding Consent Are Sufficient**

Defendant argues, based entirely on its own declaration, that Plaintiff consented to her PII being shared with Facebook. MTD at 14. As discussed at length above, a motion to dismiss is not the vehicle for resolving factual disputes with supposedly controverting evidence.

Furthermore, Defendant is wrong that the existence of privacy statements buried in its website are sufficient for consent. *See Cody v. Ring LLC*, --- F. Supp. 3d ---, 2024 WL 735667, at *4 (N.D. Cal. Feb. 22, 2024) ("Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA."). Defendant must, at the proper time, establish Plaintiff's notice of and assent to the Privacy Policies. Its hundred pages of webpages fail to show this. In short, Defendant cannot show that Plaintiff consented to the wiretapping, with or without its improper submission. *See Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Communications, Inc.*, 2024 WL 2750017, at *7 (N.D. Cal. May 28, 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims.").

## V. DEFENDANT CAN BE HELD LIABLE UNDER CIPA § 632

### A. Plaintiff's Claim Encompasses Defendant

Contrary to Defendant's assertion, Themis can be liable under CIPA § 632 even if it did not itself eavesdrop on Plaintiff's communications. First, Themis can be liable under Section 632 for recording Plaintiff's communications without her consent. In *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 99 (2006), the defendant's employees in Georgia allegedly recorded their telephone conversations with clients in California without their clients' consent. The California Supreme Court found that the defendant could be liable under CIPA § 632 for intentionally recording its conversations with clients involving confidential communications without their consent. As the California Supreme Court held, "the terms of section 632 … do[]

not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation." *Id.* at 117; *see also Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608 (2020) ("[W]e hold that sections 632 and 632.7 prohibit recording a communication, in whole or part, without the consent of all parties, no matter the particular role or degree of participation that a party has in the communication."). Thus, a party to the communication can be held liable for secretly recording a conversation under Section 632. Accordingly, Plaintiffs' allegations that Defendant employed Meta, without her consent, to secretly record consumers using an "electronic amplifying or recording device" are sufficient to state a claim against Defendant for violation of CIPA § 632. *See, e.g.*, Compl. ¶¶ 55, 64, 66.

Furthermore, a party who aids and abets a violation of § 632 is also liable under the statute. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). Section 631 of CIPA provides for aider and abettor liability, and when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera*, 791 F. Supp. 2d at 965. "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Id.* If required, Plaintiff would amend to allege that Themis is liable for aiding and abetting Facebook to violate Section 632, as she has with Section 631. *See* Compl. ¶ 57.

### B. Plaintiff Alleges That The Communications Were Confidential Within The Meaning of CIPA

Themis argues that because she alleges had a reasonable expectation of privacy based on the VPPA, Plaintiff's CIPA claims must fail because the Court will grant Defendant's motion to dismiss the VPPA claims. MTD at 15. Apart from the obvious logical fallacy, Themis is wrong on the substance. "California courts have never recognized a legal 'presumption' that internet

communications are not confidential under Section 632.3." *Brown*, 685 F. Supp. 3d 909. Indeed, the fact communications occur over the internet does not automatically mean that plaintiffs give up their expectation of privacy. *See id.*

Plaintiff has alleged that she "did not reasonably expect that anyone other than defendant would be on the other end of the communication or that other, third-party entities like Facebook, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications." Compl. ¶ 66. Nothing on the face of the Complaint is inconsistent with this allegation, making resolution of the issue premature. *Brown*, 685 F. Supp. 3d 909 (whether "any party to the communication desires it to be confined to the parties thereto," is a "fact-intensive inquiry.").

**C. The Facebook Pixel is a "Device" Under CIPA**

Citing *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) Themis argues that the Facebook Pixel is not an "electronic amplifying or recording device." MTD at 15. These cases are distinguishable, and have been distinguished, because they were decided under CIPA § 637.6, which penalizes persons who use an electronic tracking device to track a person's location or movements.

Indeed, in *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023), a case where Facebook was sued for its use of the Tracking Pixel, the district court declined to follow those cases and analogized instead to the Electronic Communications Privacy Act of 1986 (ECPA), 18 U.S.C. §§ 2510-2523, under which servers or software qualify as "devices":

> Most on point is *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015). There, plaintiffs alleged that a software application, once installed on users' phones, 'surreptitiously intercepted personal data and communications and transmitted this data to Carrier IQ and its customers.' *Id*. The Honorable Edward M. Chen held that 'plaintiffs have sufficiently alleged that the Carrier IQ Software is a "device" for purposes of the

> Wiretap Act.' *Id*. at 1084. The section 637.7 cases are distinguishable, and absent contrary authority under section 632(a), I agree that the Pixel software is a device under section 632(a). Meta's motion to dismiss the CIPA claim is DENIED.

*Doe*, 690 F. Supp. 3d at 1080. Defendant has not provided any contrary authority under Section 632(a) here, either. Accordingly, the motion should be denied on this basis.[4]

## VI. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend to cure any such deficiencies.

DATED: July 11, 2024

Respectfully submitted,

s/ *J. Dominick Larry*

J. Dominick Larry
**NICK LARRY LAW LLC**
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
pfraietta@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiff*

**pro hac vice* forthcoming

[4] With respect to Defendant's final argument regarding consent, Plaintiff refers the Court to the previous consent discussions in this Memorandum.