IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Sophia Sahagún,<br><br>Plaintiff,<br><br>v.<br><br>Themis Bar Review, LLC,<br><br>Defendant. | Case No. 24-cv-2065 |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

Defendant Themis Bar Review, LLC ("Themis") files this Reply Memorandum in Support of its Motion to Dismiss (ECF No. 14) and Memorandum of Law (ECF No. 15) ("Motion").

## ARGUMENT

### I. Plaintiff's Arguments Regarding the Attached Webpages Are Unsupported.

#### A. The *Gardner* Footnote Supporting Incorporation by Reference of the Attached Webpages Is Not Dicta and Does Not Contradict *Levenstein*.

Plaintiff's Complaint (ECF No. 1) incorporated by reference the Themis website, including the webpages attached to the Motion (the "Attached Webpages").[1] This Court's holding in *Gardner v. MeTV*, also a VPPA case, compels this result: when a plaintiff's complaint "reference[s] [a defendant's] website, including specifically their viewing of its video content . . . its contents can be incorporated by reference." 681 F. Supp. 3d 864, 867 n.2 (N.D. Ill. 2023).

Plaintiff argues that the *Gardner* footnote was dicta because the Court "did not actually reach any issues where the website's contents were relevant." Plaintiff's Opposition to Motion to Dismiss at 3 (ECF No. 38) ("Opposition"). To the contrary, the footnote was relevant to the

[1] *See* Declaration of Ellen Sass Douglas (ECF No. 15-1) ("Douglas Declaration").

outcome of the case: the *Gardner* Court dismissed the complaint not simply because plaintiffs failed to ***allege*** that a login was required to access video content but because "the video content available on its website ***can*** be accessed by anyone." 681 F. Supp. 3d 867 (emphasis added). The Court supported this conclusion by citing a page of the motion to dismiss on which defendant provided a hyperlink to its website and stated that "[s]imply going on [its] website confirms that anyone can access" its video content. *Id.*; Defendant's Motion to Dismiss at 5, *Gardner v. MeTV*, No. 1:22-cv-05963 (N.D. Ill. Jan. 20, 2023), ECF No. 16.

Nor is the *Gardner* footnote inconsistent with binding authority. To be sure, as Plaintiff observes, Opp. at 4, documents are not incorporated by reference unless they are "central" to the Complaint. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). But the Attached Webpages ***are*** central to Plaintiff's Complaint, which refers to each one specifically, albeit not by name or URL. The Complaint centers on Plaintiff's alleged use of the Themis Website, and so incorporates by reference the cookie banner, which is present on every public page of the Themis Website.[2] Further, the Complaint attempts to show that Plaintiff is a customer (as required for VPPA liability) by alleging "enroll[ing] in test preparation courses" on the Themis Website. Compl. ¶ 43. In doing so, it incorporates the Themis Website's sign-up page and enrollment panel.[3] Similarly, to support a disclosure of personally identifiable information (as also required for VPPA liability), the Complaint alleges watching Themis video content on the Themis Website, *id.* ¶ 45, and so incorporates the webpage on which Themis's video content is presented, including its URL and the fact that it is paywalled.[4] Finally, since the Cookie Banner, the Signup Page, and the Enrollment Panel all include hyperlinks to the User Agreements, the Complaint incorporates by

[2] Douglas Decl. ¶¶ 8–10, Ex. D.

[3] Douglas Decl. ¶¶ 11–19, Ex. E, F.

[4] Douglas Decl. ¶¶ 20–23, Ex. G.

reference those agreements[5]—just as a Complaint citing one page of a contract would incorporate every page of that contract, *see Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–79 (2d Cir. 2017) (comparing a hyperlinked webpage to the reverse side of a piece of paper), even those that undermined the plaintiff's case, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (the purpose of the incorporation by reference doctrine is to "prevent[] a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit" (cleaned up)).[6]

To the extent that Plaintiff objects to incorporation by reference on grounds that the Attached Webpages are not authenticated, Opp. at 5, she is wrong. The Douglas Declaration authenticates the Attached Webpages as business records, Douglas Decl. ¶¶ 2–4, and Plaintiff does not meaningfully dispute their authenticity. The Douglas Declaration also affirms that the information in Themis's business records is identical to the information publicly accessible via the Wayback Machine. *Id.* ¶ 4 n.1.

### B. *Specht* Does Not Preclude Judicial Notice of the Attached Webpages.

Plaintiff's argument that the court cannot judicially notice the Attached Webpages because they were retrieved from the Wayback Machine is similarly erroneous—and to the extent the Court has concerns about incorporation by reference, judicial notice is a reasonable alternative, as this

[5] Douglas Decl. ¶¶ 5–7, Ex. A, B, C.

[6] Plaintiff muddies the waters by erroneously asserting that the Attached Webpages "all relate to Defendant's presumed affirmative defense of consent." Opp. at 4. To the contrary, Themis does not raise any affirmative defense of consent in the Motion. Rather, Themis argues that Plaintiff has failed to plausibly allege the no-consent ***element*** of her CIPA claims, Mot. at 13, 15; *see, e.g.*, *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135–36 (N.D. Cal. 2015) (to state a CIPA claim requires plausibly alleging lack of consent), and has failed to allege the not-authorized ***element*** of her VPPA claim, Mot. at 11 (citing *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (to state a VPPA claim requires plausibly alleging that the disclosure was not authorized)). Themis also uses the Attached Webpages to support various other of its arguments. *See* Mot. at 8–9, 9, 10, 12, 13, 14 (repeatedly contrasting Plaintiff's allegations with the contents of the Themis Website).

Court noted in *Gardner*, 681 F. Supp. 3d at 867 n.2. Indeed, the "overwhelming" weight of authority, including from this Court, supports judicial notice of archived webpages. *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (string-citing nine cases taking judicial notice of Wayback Machine archives); *Hepp v. Ultra Green Energy Servs., LLC*, 2016 WL 1073070, at *2 (N.D. Ill. Mar. 18, 2016) (taking judicial notice of Wayback Machine archives).

The precedents on which Plaintiff relies do not require a contrary result. Far from holding that judicial notice of archived webpages is improper, *Specht v. Google Inc.* never even considered the issue because the plaintiff never requested judicial notice. 747 F.3d 929, 993 (7th Cir. 2014) (holding that the district court had not acted unreasonably in finding a witness's statement too unreliable to authenticate the screenshots at issue). Similarly, *United States v. Bansal*, 663 F.3d 634 (3d Cir. 2011), does not even mention judicial notice. Most of the district court cases that Plaintiff cites are inapplicable, involving requests for judicial notice of ***the truth of the statements*** on the websites at issue rather than of ***what was on the defendant's website*** at the relevant time period. Ultimately, Plaintiff cites only one case that rejected judicial notice of archived webpages, *My Health, Inc. v. Gen. Elec. Co.*, 2015 WL 9474293 (W.D. Wis. Dec. 28, 2015). This single, unpublished case cannot withstand the weight of contrary authority.

### C. Plaintiff's Objection to the Douglas Declaration's Description of the Hyperlinks in the Attached Webpages Is Meritless.

Plaintiff objects that the Douglas Declaration includes descriptions of the hyperlinks present on the Attached Webpages. Opp. at 6. But these portions of the declaration merely summarize the archived webpages publicly available on the Wayback Machine. When a court considers a webpage incorporated by reference or takes judicial notice of a webpage, including an archived copy of it, the court can consider what text is hyperlinked and where the hyperlinks go. *E.g.*, *Nat'l Grange of the Ord. of Patrons of Husbandry v. California State Grange*, 182 F. Supp.

3d 1065, 1082 & n.5 (E.D. Cal. 2016) (taking judicial notice of webpages, including hyperlinked text, on grounds that a hyperlink is an integral part of how a computer user views a webpage); *see, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 874, 876 (N.D. Cal. 2018) (taking judicial notice of the fact that a webpage containing a user agreement included a hyperlink to another webpage "containing the opt-out procedure").

## II. Plaintiff Does Not Meaningfully Engage Themis's Constitutional Arguments.

### A. Plaintiff Ignores *TransUnion*'s Historical Analogue Requirement for Injury-in-Fact and Relies on Obsolete Caselaw.

Although Plaintiff cites *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), she ignores its central teaching. *TransUnion* clarified that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 426 (cleaned up). Rather, standing for intangible harms requires that "the alleged injury to plaintiff"—***not*** the mischief addressed by the statute—bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425 (cleaned up); *see id.* at 427 (a statute having been enacted to address a significant social problem does not guarantee that every plaintiff who can satisfy its elements has standing). While the VPPA may have been enacted to preserve personal privacy, Plaintiff has not and cannot explain how Themis's alleged VPPA violation amounts to anything more than a technical violation of the statute. And Plaintiff makes no attempt to rebut Themis's argument, supported by ample Seventh Circuit precedent, that a disclosure of ***legal education*** video watch history to ***a single third party*** simply is not analogous to any traditionally recognized privacy injury. *See* Mot. at 7–9.

Instead, Plaintiff relies entirely on cases finding standing for VPPA claims generally, on grounds expressly ruled out by *TransUnion*. *See* Opp. at 7–8. In *Sterk v. Redbox Automated*

*Retail, LLC*, for example, the Seventh Circuit reasoned that even a "technical violation" of the VPPA creates standing because "Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." 770 F.3d 618, 623 (7th Cir. 2014) (cleaned up). *TransUnion* held the exact opposite. The same problem infects the out-of-circuit district court caselaw Plaintiff cites. *See* Opp. at 7–8 (citing *Addi*, *Collins*, *Austin-Spearman*, and *Yershov*). Even the two decisions postdating *TransUnion* failed to grapple with it, simply reciting that "'disclosure of private information' is an intangible harm traditionally recognized as actionable" without analyzing whether the alleged VPPA violation at issue actually bore the requisite analogy to the common law tort of disclosure of private information. *Addi v. Int'l Bus. Machines, Inc.*, 2024 WL 2802863, at *3 (S.D.N.Y. May 31, 2024); *Collins v. Pearson Educ., Inc.*, 2024 WL 895316, at *3 (S.D.N.Y. Mar. 1, 2024). Current Seventh Circuit precedent—incorporating the lessons of *TransUnion*—makes clear that it does not. *See Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735–36 (7th Cir. 2023) (holding that, for standing to be based on an analogy to the tort of disclosure of private information, the disclosure must be to the general public).

### B. Plaintiff's Response to Themis's First Amendment Argument Is Circular.

Although Plaintiff describes Themis's First Amendment argument as "specious," Opp. at 13, it is Plaintiff's response that defies fundamental First Amendment principles. Plaintiff does not contest that application of the VPPA to Themis burdens commercial speech, and she identifies no government interest the VPPA serves beyond preserving personal privacy. Plaintiff therefore must show that the VPPA, including its definition of the phrase "video tape service provider," is "drawn to achieve" that interest without placing a disproportionate burden on Themis's speech rights. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011). Yet Plaintiff never explains how the government's interest in protecting privacy can justify including legal-education services like

Themis within the sweep of the statute.

Instead, Plaintiff makes the circular argument that, because the VPPA purportedly ***does*** apply to legal-education providers like Themis, then the First Amendment ***allows*** the VPPA to apply to legal-education providers like Themis. *See* Opp. at 13 (arguing that because "the VPPA makes no distinction between recreational and educational videos for its purposes," the government's interest in protecting privacy "applies with equal force" to recreational video content providers and to legal education providers). That is not the law. It is not enough that Congress enacted the VPPA in order to protect privacy. In order for the VPPA to be enforceable against Themis, the statute's broad definition of "video tape service provider" to include legal-education providers like Themis would need to actually advance the cause of protecting privacy. Plaintiff does not even try to explain how it would.

Plaintiff also observes that no court has yet endorsed Themis's argument. *Id*. But this is unsurprising: most VPPA defendants could not even make Themis's First Amendment argument because most would fall squarely within the statute even under a narrower construal of the phrase "video tape service provider." That a handful of other courts have rejected ***different*** First Amendment arguments raised in defense against VPPA claims, *see, e.g.*, *Saunders v. Hearst Television, Inc.*, 2024 WL 126186, at *4–6 (D. Mass. Jan. 11, 2024), says nothing about whether Themis's argument is meritorious. Similarly, Plaintiff's observation that other courts have interpreted the phrase "video tape service provider" broadly (without considering any constitutional issues raised by such an interpretation), Opp. at 9–10, is not a meaningful response to Themis's argument that the phrase must be construed narrowly both to carry out Congress's intention in enacting the statute and to apply the doctrine of constitutional avoidance.

## III. Nothing Plaintiff Says Changes That Her Allegations Are Conclusory and Implausible.

### A. Plaintiff's Alleged Lack of Knowledge and Consent Is Implausible In Light of the Attached Webpages.

Plaintiff's arguments that her injury was not self-inflicted (as required for standing), Opp. at 8–9, that she was not provided an adequate opportunity to opt out of limited marketing disclosures (as required for VPPA liability), *id.* at 12, and that she did not consent to operation of any tracking pixel on the Themis Website (as required for CIPA liability), *id.* at 14–15, all fall apart upon consideration of the Attached Webpages. Plaintiff alleges watching video content on the Themis Website, but every page of the Themis Website contains a cookie banner giving Plaintiff reasonable notice of applicable user agreements; further, Plaintiff alleges enrolling in a Themis bar review course, but the Themis sign-up page and enrollment page both require users to click a button manifesting consent to the user agreements. *See* Mot. at 2–4. *Contra* Opp. at 15 (arguing that the Attached Webpages show only "the existence of privacy statements buried in its website," but not "Plaintiff's notice of and assent to" them). The user agreements in question, which Plaintiff necessarily had notice of and consented to in using the Themis Website, informed her both of Themis's use of tracking pixels and of how to opt out of tracking. *See* Mot. at 3–5.

Nor has Plaintiff succeeded in identifying any fact issue this Court would have to reach before granting Themis's motion to dismiss based on its self-inflicted injury, marketing safe harbor, and consent arguments. Plaintiff argues that Themis does not "sufficiently explain how the Facebook Pixel operates on its website," Opp. at 9, but how any particular tracking pixel on the Themis website operates is not relevant to whether Plaintiff had knowledge of Themis's use of tracking pixels and chose nevertheless to use the Themis Website. And although Plaintiff argues that whether Themis's opt-out notice is "clear and conspicuous" is "a factual dispute," Opp. at 12, this question is not one of fact, but of law. *Cole v. U.S. Capital*, 389 F.3d 719, 729 (7th Cir. 2004).

Themis's opt-out notice was included in the Privacy Policy under a bolded, all-capitalized heading reading "**WHAT ARE YOUR CHOICES?**"[7] and as a matter of law such a notice is clear and conspicuous. In sum, Plaintiff does not meaningfully rebut Themis's arguments regarding Plaintiff' notice of and consent to the user agreements.

### B. The Alleged Disclosure of Plaintiff's Video Watch History Is Both Conclusory and Implausible in Light of the Attached Webpages.

As Themis argued in its Motion, Plaintiff's conclusory allegation that a Themis Video URL "permits an ordinary person to identify what video the individual has watched," Compl. ¶ 30, is too thin a reed to support a plausible inference that Themis disclosed personally identifiable information beyond names and addresses, intercepted communicative content, or eavesdropped on confidential communications. *See* Mot. at 10–11, 13–14, 15. Plaintiff's response to this argument is meritless and consists in large part of simply reiterating the conclusory allegations Themis has already showed to be defective. *See, e.g.*, Opp. at 11, 14.

To begin, as Plaintiff does not rebut, the contents of the Themis Website show that (1) a Themis Video URL includes only numerical identifiers, not any description of the corresponding video, and (2) the Themis Website's paywall prevents anyone without a Themis account from following a Themis Video URL to identify the corresponding video. *See* Mot. at 2–3. These facts trump Plaintiff's mere allegations. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (when an exhibit "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss"). Accordingly, under the very precedents Plaintiff relies on, a Themis Video URL cannot count as either personally identifiable information or communicative content. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d

[7] Douglas Decl., Ex. B-2 & B-3.

Cir. 2016) (information is not personally identifiable information if not identifiable by an "ordinary person"); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (information is not PII if using it to identify video watch history requires "unforeseeable detective work"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (distinguishing communicative content, i.e., what is on the page, from record information, i.e., where to find it).

But even if the Court does not consider the Attached Webpages, Plaintiff's allegations are insufficient to support a plausible inference of a VPPA or CIPA violation. In particular, Plaintiff's conclusory statement that a Themis Video URL "permits an ordinary person to identify what video the individual has watched," Compl. ¶ 30, is not supported by any factual allegation. Apart from this conclusory assertion, the facts alleged are not only equally "compatible with" but "more likely explained by" conduct entirely consistent with Themis's obligations under the VPPA and the CIPA wiretapping provision. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Plaintiff does not allege that webpages with Themis video content could be accessed without a paid subscription; that Themis Video URLs contained information about the corresponding videos beyond their location; or any other factual allegation that could arguably support an inference that an ordinary person could move from Themis Video URL to video watch history. This silence speaks volumes.

Further, since Plaintiff fails to state a VPPA claim, her CIPA eavesdropping claim must also fail because her alleged "expectation of privacy" could only have been "reasonable" if "based on the VPPA." Compl. ¶ 66. Though Plaintiff now tries to characterize the phrase "reasonably expect" as a factual allegation, Opp. at 17, it remains a mere restatement of the elements of the claim, *see* CIPA § 632(c) (defining a "confidential communication" in terms of whether the parties "reasonably expect" to be overheard). No factual allegations support the conclusion that Plaintiff

had any such reasonable expectation—and Plaintiff's only argument on this issue is a non sequitur. Whether or not internet communications in general are presumptively non-confidential, Opp. at 16–17, has no bearing on whether Plaintiff reasonably believed that the specific communications at issue here ***were*** confidential—as Plaintiff bears the burden of alleging. Plaintiff has identified no reason to think that she did so believe, and can identify no such reason. No reasonable would-be lawyer would expect confidentiality regarding the mere fact of her having accessed unspecified bar review materials.

Respectfully submitted,

/s/ Joshua D. Lee
Joshua D. Lee
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607-7932
Telephone: (312) 964-7800
Facsimile: (214) 694-7799
josh.lee@nortonrosefulbright.com

James V. Leito IV*
Jackie Baker*
Joseph Simmons*
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
james.leito@nortonrosefulbright.com
jackie.baker@nortonrosefulbright.com
joseph.simmons@nortonrosefulbright.com

*: *Admitted Pro Hac Vice*

*Counsel for Defendant Themis Bar Review, LLC*