**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SOPHIA SAHAGÚN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:24-cv-02065 |
| v. | Honorable Steven C. Seeger |
| THEMIS BAR REVIEW, LLC, | |
| Defendant. | |

**PLAINTIFF'S UNCONTESTED MOTION FOR AND MEMORANDUM IN SUPPORT**
**OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.    Plaintiff's Allegations ................................................................................ 2

    B.    Litigation, Negotiation, and Settlement ................................................... 3

III.   TERMS OF THE SETTLEMENT AGREEMENT ............................................ 4

    A.    Class Definition ......................................................................................... 4

    B.    Monetary Relief ........................................................................................ 4

    C.    Payment of Settlement Notice and Administrative Costs......................... 5

    D.    Payment of Attorneys' Fees, Costs, and Incentive Award ....................... 5

    E.    Release of Liability ................................................................................... 6

IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
    APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT
    CLASS ............................................................................................................... 6

    A.    The Settlement Class Can Be Certified ................................................... 6

        1.    The Settlement Class Is Sufficiently Numerous. ......................... 7

        2.    Common Issues of Fact and Law Predominate............................. 7

        3.    Plaintiff's Claims Are Typical of Settlement Class Members'
            Claims. .......................................................................................... 9

        4.    The Adequacy Requirement Is Satisfied.....................................10

        5.    A Class Action Is a Superior Method of Resolving the
            Controversy..................................................................................11

        6.    The Class Is Ascertainable...........................................................13

    B.    The Proposed Settlement Warrants Preliminary Approval.....................14

        1.    Plaintiff and Proposed Class Counsel Have Adequately
            Represented the Settlement Class. ...............................................14

        2.    The Settlement Was Negotiated at Arm's Length. ......................15

        3.    The Relief Provided for the Class Is Adequate...........................17

            a)    The Benefits Of Settlement Outweigh The Cost, Risk, And
                 Delay Of Further Litigation. ...........................................17

            b)    The Proposed Method Of Distributing Relief To The
                 Settlement Class Is Effective. .........................................19

i

c)    The Terms Of The Requested Attorneys' Fees Are Reasonable. ..................................................................................20

d)    There Are No Side Agreements Separate From The Settlement Agreement. ......................................................21

4.    The Settlement Treats Class Members Equitably. .....................................21

C.    The Proposed Notice Plans Should Be Approved in Form and Substance .......................................................................................................... 22

V.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 23

VI.    CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................................... 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................................... 12, 18

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................................ 6, 7

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) .................................................................................................... 6

*Barnes v. Air Line Pilots Ass'n, Int'l*,
310 F.R.D. 551 (N.D. Ill. 2015) ............................................................................................... 7

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) .................................................................................................. 8

*Bell v. PNC Bank, Nat'l Ass'n*,
800 F.3d 360 (7th Cir. 2015) ................................................................................................ 7, 8

*Bernal v. NRA Grp. LLC*,
318 F.R.D. 64 (N.D. Ill. 2016) ......................................................................................... 12, 13

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) .................................................................................... 11

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) .................................................................................................... 9

*Charvat v. Valente*,
2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ............................................................... 16, 18, 19

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................................ 11

*Fischer v. Instant Checkmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ....................................................................... 9, 12

*Goldsmith v. Tech. Sols. Co.*,
    1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...................................................... 18

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583 (7th Cir. 2011) ...................................................... 10

*Howard v. Cook Cnty. Sherriff's Office*,
    989 F.3d 587 (7th Cir. 2021) ...................................................... 8, 9, 10

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
    227 F.R.D. 284 (N.D. Ill. 2005) ...................................................... 12

*Lechuga v. Elite Eng'g, Inc.*,
    559 F. Supp. 3d 736 (N.D. Ill. 2021) ...................................................... 10

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ...................................................... 8

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
    2020 WL 4345418 (N.D. Ill. July 29, 2020) ...................................................... 24

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...................................................... 7, 13

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ...................................................... 21

*Pawelczak v. Fin. Recovery Servs., Inc.*,
    286 F.R.D. 381 (N.D. Ill. 2012) ...................................................... 12

*Perez v. Rash Curtis & Assocs.*,
    2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ...................................................... 11

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993) ...................................................... 10

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................... 19, 20

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) ...................................................... 14, 15, 16

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ...................................................... 9

*Starr v. Chi. Cut Steakhouse*,
  75 F. Supp. 3d 859 (N.D. Ill. 2014) ........................................................... 10

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ....................................................................... 8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ..................................................................... 17

*T.K. through Leshore v. Bytedance Tech. Co., Ltd.*,
  2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ..................................... *Passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 8

*Wright v. Nationstar Mortg. LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ...................................... 12, 18

*Young v. Rolling in the Dough, Inc.*,
  2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ......................................... 16, 19

**STATUTES**

18 U.S.C.A. § 2710 ............................................................................................ 1

Cal. Penal Code § 630 ........................................................................................ 1

**RULES**

Fed. R. Civ. P. 23 .................................................................................... *Passim*

Fed. R. Civ. P. 26 ............................................................................................... 3

**OTHER AUTHORITIES**

Newberg and Rubenstein on Class Actions (6th ed.) ....................................... 6

## I.     INTRODUCTION

Plaintiff Sophia Sahagún ("Plaintiff") respectfully requests that this Court grant preliminary approval to the Parties' proposed Class Action Settlement Agreement.[1] After nearly a year and a half of litigation and many months of negotiation—including a full-day mediation with Hon. James F. Holderman (Ret.) of JAMS Chicago—the Parties have reached a proposed class-wide settlement that, if approved, will resolve the claims against Themis Bar Review LLC ("Themis" or "Defendant") in this Action and provide significant relief to the proposed Settlement Class.

Plaintiff alleges that Themis violated the federal the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA") and the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* ("CIPA") due to Themis's alleged installation and use of the Facebook Tracking Pixel on its website, www.themisbar.com.  Under the Settlement Agreement's terms, Themis has agreed to establish a non-reversionary Settlement Fund of $2,250,000 to be shared *pro rata* by claiming Settlement Class Members (net of administrative expenses, attorneys' fees, and a service award). Assuming a generous but realistic 15-25% claims rate, Class Counsel estimate that each claiming Settlement Class Member will receive a payment of around $263-$526. As a result of this lawsuit, Themis has also ceased engaging in the disputed conduct and pixel tracking technology has been removed from its website.

This is significant relief by any measure and exceeds the relief provided in a similar VPPA class action settlements.  *See, e.g.*, *Jackson v. Fandango Media, LLC*, Case No. 2023LA000631 (Ill. Cir. Ct. DuPage Cnty.) (providing claiming class members $5 cash payment or $15 movie ticket voucher); *Beltran et al v. Sony Pictures Entertainment, Inc.*, 1:22-cv-04858

---

[1]     Capitalized terms used in this motion are defined in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"), submitted herewith as Exhibit 1.

1

(N.D. Ill.) (providing approximately $30 per class member); *Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP (C.D. Cal.) (providing approximately $6.45 per class member).  In light of this relief, as well as other considerations discussed below, the proposed Settlement Agreement more than satisfies the requirements for preliminary approval under Rule 23. Accordingly, Plaintiff respectfully requests that this Court preliminarily approve the proposed Settlement Agreement, certify the proposed Settlement Class for settlement purposes, direct that notice be provided to Settlement Class Members, and schedule a final fairness hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiff's Allegations

Plaintiff filed this class action lawsuit on March 12, 2024 (Dkt. 1) (the "Compl.") Defendant is a prominent test preparation service company that offers educational legal video lectures through its website, themisbar.com.  (Compl. ¶¶ 1, 28.)  Plaintiff alleges that Defendant violated the VPPA and CIPA due to Defendant's installation and use of the Facebook Tracking Pixel on Defendant's website, themisbar.com.  (*Id*. ¶¶ 3-4.)  Specifically, Plaintiff alleges the Facebook Tracking Pixel "permits an ordinary person to identify what video an individual has watched" and that "themisbar.com contains the code for at least eight different Facebook cookies[.]"  (*Id.* ¶ ¶ 30-31.)  Plaintiff further alleges that, when someone who is logged into Facebook watches a video on Defendant's website, the Facebook Tracking Pixel transmits personally identifiable information to Facebook along with that user's Facebook ID.  (*Id.* ¶ 32.)  With the information Facebook allegedly receives from the Themis website via the Facebook Tracking Pixel, it permits Facebook to see who watched what video. (*Id.* ¶ 34.)  This, Plaintiff alleges, constitutes a violation of the VPPA and CIPA.

## B.    Litigation, Negotiation, and Settlement

Defendant moved to dismiss Plaintiff's Complaint on May 28, 2024.  (Dkt. No. 14.)
Defendant also moved to stay discovery pending its motion to dismiss on June 20, 2024.  (Dkt.
No. 29.)  The Court granted Defendant's motion to stay discovery.  (Dkt. No. 31.)  Plaintiff
opposed Defendant's motion to dismiss on July 12, 2024 (Dkt. No. 38), and Defendant filed its
reply brief on August 1, 2024.  (Dkt. No. 41.)  While Defendant's motion was pending, the
parties respectively filed multiple notices of supplemental authority and responses thereto,
apprising the Court of recent developments relevant to the claims at issue.  (Dkt. Nos. 60, 63, 64,
65, 68, 69, 70.)

Since the pendency of Plaintiff's lawsuit, as the parties are required to do so under Fed.
R. Civ. P. 26, the parties had arm's-length discussions about the possibility of settlement.
(Declaration of Philip L. Fraietta ("Fraietta Decl.") ¶ 5.)[2] To that end, the parties ultimately
agreed to participate in a private mediation.  In order to allow the Parties to meaningfully engage
at the mediation, they engaged in informal discovery in advance.  (*Id*.) Plaintiff sought data
reflecting the potential class size and information about the metrics Defendant maintained
regarding visits to and interactions with its website, which Defendant provided. (*Id.* ¶ 6.) With
this data in hand, the Parties exchanged detailed and thorough mediation statements, which
addressed relevant facts, the strength of the claims and defenses at issue, and recent in the VPPA
and CIPA settlement landscape. (*Id.* ¶ 7.) The Parties then virtually attended a full-day mediation
session with Hon. James F. Holderman (Ret.) on November 19, 2024. (*Id.* ¶ 8.) Despite multiple
rounds of back-and-forth negotiations facilitated by Judge Holderman, the Parties were unable to
reach an agreed resolution during the mediation. (*Id*.)

---

[2] The Fraietta Declaration is submitted herewith as Exhibit 2.

Over following several months, the Parties continued to discuss the possibility of settlement at arm's length, while simultaneously submitting notices of supplemental authority (and responses thereto) to the Court regarding Defendant's pending motion to dismiss. The parties also engaged in formal discovery, serving and responding to written discovery. In tandem with these litigation efforts, the Parties continued arm's-length negotiations and were ultimately able to reach a settlement in principle. (*Id.* ¶ 9.) The Parties spent approximately two months negotiating the final details of the Settlement Agreement that Plaintiff now presents to the Court for preliminary approval. (*Id.* ¶ 10.)

## III. TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth fully in the Class Action Settlement Agreement, and are briefly summarized here:

### A. Class Definition

The Settlement Class is defined as "all persons in the United States who, from March 12, 2022, to and through August 22, 2024: (1) have or had a Facebook account; (2) also had a digital subscription to Themis Bar Review; and (3) who viewed videos on Themis's website while their Facebook membership was active." (Settlement § 1.28.) The definition also contains the typical exclusions from the Settlement Class: (1) any judge or magistrate judge presiding over this Action and members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; (3) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (4) the legal representatives, successors, or assigns of any such excluded persons. (*Id.*)

### B. Monetary Relief

Pursuant to the Settlement, Themis will establish a non-reversionary Settlement Fund in

the amount of $2,250,000. (*Id.* § 1.30.) Each Settlement Class Member who submits a valid

Claim Form shall be entitled to payment of a *pro rata* share of the Settlement Fund after

payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive

award, if approved by the Court. (*Id.* § 2.1(a).) Assuming a 15-25% claims rate, Class Counsel

estimate that each claiming Settlement Class Member will receive a net payment of around $263-

$526. (Fraietta Decl. ¶ 15.)

Any checks that remain uncashed after 180 days of issuance, and any electronic deposits

unable to be processed within 180 days of the first attempt, shall remain in the Settlement Fund

to be distributed *pro rata* to claiming Settlement Class Members, if practicable, or in a manner

otherwise directed by the Court upon application made by one of the parties. (Settlement

§ 2.1(d).) No portion of the Settlement Fund will revert to Defendant should the settlement be

approved. (*Id.* § 2.1(f).)

### C.    Payment of Settlement Notice and Administrative Costs

All Settlement notice and administration costs shall be paid from the Settlement Fund.

(*Id.* § 1.30.) This includes all expenses incurred by the Settlement Administrator in, or relating

to, administering the Settlement, providing Notice, creating and maintaining the Settlement

Website, receiving and processing Claim Forms, dispersing settlement payments, and any other

related expenses.

### D.    Payment of Attorneys' Fees, Costs, and Incentive Award

As part of the Settlement, Defendant has agreed that Class Counsel are entitled to

reasonable attorneys' fees in an amount to be determined by the Court. (*Id.* § 8.1.) Proposed

Class Counsel has agreed to limit its request to 35% of the Settlement Fund remaining after

payment of Settlement Administration Expenses and service awards, with no consideration from

Defendant.  (*Id.*) Defendant has also agreed, subject to Court approval, to pay Plaintiff a service

award in the amount of $5,000 from the Settlement Fund in recognition of her efforts as Class Representative. (*Id.* § 8.3.) Plaintiff will move for these payments via a separate request after preliminary approval and prior to the deadline to object.

### E. Release of Liability

In exchange for the relief described above, each Settlement Class Member will release Themis from all past and present claims arising from or related to the use of pixel tracking technology on its website, including but not limited to claims under the VPPA, CIPA, or other analog state and federal wiretapping statutes. (*Id.* §§ 1.23-1.25, 3.1.)

## IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASS

Approval of a class action settlement proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.).

At the first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are satisfied.

### A. The Settlement Class Can Be Certified

Taking the second prong first, this Court will be able to certify the Settlement Class for purposes of entering the final judgment. District courts have broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). To merit certification, the Settlement Class must satisfy the requirements of Rule 23(a):

numerosity, commonality, typicality, and adequacy of representation. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, where, as here, certification is sought pursuant to Rule 23(b)(3), it must be shown that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Id*. Finally, Rule 23 contains an implicit "ascertainability" requirement "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). The proposed Settlement Class here satisfies all the Rule 23(a) and (b)(3) prerequisites as well as Rule 23's implicit ascertainability requirement.

### 1. The Settlement Class Is Sufficiently Numerous.

A class action may proceed when the proposed class "is so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (internal citation omitted). While there is no "magic number" at which numerosity exists, courts have typically found the element satisfied when the class includes at least forty people. *Id*. Here, Defendant identified 53,980 potential individuals in the Settlement Class, *see* Fraietta Decl. ¶ 15, which easily satisfies the numerosity requirement.

### 2. Common Issues of Fact and Law Predominate.

Rule 23(a)(2)'s commonality requirement—that "there are questions of law or fact common to the class"—and Rule 23(b)(3)'s predominance requirement—that such questions "predominate over any questions affecting only individual members"—are closely related and often analyzed together. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately").

Common questions are those that are "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Bell*, 800 F.3d at 374 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). "Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff, . . . no common answers are likely to be found." *Id.* But where "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," commonality exists. *Id*.

Predominance, in turn, "builds on commonality." *Howard v. Cook Cnty. Sherriff's Office*, 989 F.3d 587, 607 (7th Cir. 2021). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). Predominance is satisfied "when common questions represent a significant aspect of [the] case and can be resolved for all members of [the] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

Here, common issues of law and fact exist and predominate because each Settlement Class Member makes the same contention arising out of the same alleged course of conduct: that

Themis violated the VPPA and CIPA by embedding pixel tracking technology on its webpages that host videos, thereby disclosing personally identifiable information and video viewing behavior to a third party (Facebook) in alleged violation of the law.

Additionally, Themis's defenses present common, not individual, questions—whether Plaintiff consented to the alleged conduct, whether Themis's conduct is protected by the First Amendment, and whether Plaintiff fails to satisfy the elements of the VPPA or CIPA—will rely on common proof of Themis's conduct or on resolution of broad legal questions applicable to all Settlement Class Members, not on circumstances unique to any individual.

### 3. Plaintiff's Claims Are Typical of Settlement Class Members' Claims.

The next certification prerequisite—typicality—requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "As a general matter, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (internal quotations omitted). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied. *See Fischer*, 2022 WL 971479 at *7 ("[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)).

Here, there is nothing separating Plaintiff's VPPA and CIPA claims from that of any other Settlement Class Member. Plaintiff asserts that Themis violated the VPPA and CIPA by disclosing her PII and video viewing activity to Facebook through its use of the Facebook Tracking Pixel on its website, without her consent—precisely the violative conduct it is alleged to have done with respect to every other Settlement Class Member. Because Plaintiff's claims arise from the same course of conduct and are based on the same legal theory as the claims of all other Settlement Class Members—that is, the claims "have the same essential characteristics," *Howard*, 989 F.3d at 605—typicality is satisfied.

### 4. The Adequacy Requirement Is Satisfied.

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement comprises two parts: (1) adequacy of the named plaintiff as representative of the proposed class's myriad members, and (2) adequacy of the proposed class counsel. *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 742 (N.D. Ill. 2021) (citing *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Here, both Plaintiff and proposed Class Counsel are more than adequate.

To be an adequate representative, "the named Plaintiff[] must not have 'antagonistic or conflicting claims.'" *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). Plaintiff has no such antagonism toward or conflict with the class, as her claims and interests in this litigation are completely aligned with those of the Settlement Class Members. (*See* § IV(A)(2)–(3), *supra*.) Where "the claims of the named Plaintiff[] are essentially identical to those of the proposed class members," and "[t]here are no individual defenses or other claims that would in any way impede

10

the named Plaintiff[']s[] ability to adequately represent the interest of the class members," the named Plaintiff is an adequate class representative. *Starr*, 75 F. Supp. 3d at 874.

Likewise, proposed Class Counsel satisfies the adequacy requirement. Bursor & Fisher, P.A. has extensive experience litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., submitted herewith as Exhibit 3.) "The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014). In 2019, the firm won its sixth jury verdict in *Perez v. Rash Curtis & Associates*, No. 4:16-cv-03396-YGR (N.D. Cal.), a TCPA case, for $267 million. The *Perez* case ultimately settled for $75.6 million. *See Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021). The firm has also litigated, tried, and settled numerous high-profile class action cases involving statutes like the IRPA. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting named plaintiff's motion for summary judgment in PPPA case ultimately resulting in $50 million settlement). Bursor & Fisher has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Fraietta Decl. ¶ 19.)

Accordingly, because both Plaintiff and Class Counsel will fairly and adequately protect the interests of the Class, the adequacy requirement—like the other Rule 23(a) factors—is satisfied.

### 5. A Class Action Is a Superior Method of Resolving the Controversy.

The proposed Settlement Class also satisfies the requirements of Rule 23(b)(3). In addition to the predominance requirement discussed above, Rule 23(b)(3) requires that "a class

action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets out four criteria germane to this inquiry, *id.*, but only the first three are relevant when class certification is sought as part of a settlement. *Wright v. Nationstar Mortg. LLC*, 2016 WL 4505169, at *3 (N.D. Ill. Aug. 29, 2016) ("In the context of certifying classes for settlement purposes only, the Supreme Court has held that certification must meet the usual requirements of Rule 23(a) and (b), *except for* the manageability prong of Rule 23(b)(3)(D).") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997)).

The first consideration—"class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A)—weighs in favor of superiority here. There is no indication that any Class Member has brought an individual VPPA or CIPA suit against Themis; indeed, "many class members may be unaware of their rights under [the IRPA]." *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Class Members' interest in individually controlling a separate action is therefore "minimal." *Id.* Further, the modest statutory damages amount available under the VPPA and CIPA relative to the high costs of retaining adequate counsel "is unlikely to provide sufficient incentive for individual members to bring their own claims." *Fischer*, 2022 WL 971479, at * 13 (quoting *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012); *see also Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually.").

The second consideration—"the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B)—is not

applicable here. There are no other known actions addressing the conduct alleged, and this consideration thus "is not a factor." *Bernal*, 318 F.R.D. at 76.

The third consideration—"the desirability or understandability of concentrating the litigation of the claims in [this] forum," Fed. R. Civ. P. 23(b)(3)(C)—also weighs in favor of superiority. Themis is headquartered in this District, and therefore, this Court is an appropriate forum in which to concentrate the litigation and settlement of these aggregated claims.

Furthermore, not only do the relevant criteria expressly laid out in Rule 23(b)(3) support a finding of superiority, an overall consideration of "both the costs *and benefits* of the class device" does as well. *Mullins*, 795 F.3d at 663. Consolidating class members' claims in one proceeding will generate economies of time and expense and promote legal uniformity. In contrast, requiring individual cases "would make no sense," because "[p]arallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76.

### 6. The Class Is Ascertainable.

Finally, in addition to satisfying the explicit requirements of Rule 23(a) and (b)(3), the proposed class satisfies Rule 23's implicit ascertainability requirement, which requires that a class "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Under the 'weak' version of ascertainability employed by the Seventh Circuit, courts worry most about 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" *T.K. through Leshore v. Bytedance Tech. Co., Ltd.*, 2022 WL 888943, at *3 (N.D. Ill. Mar. 25, 2022) (quoting *Mullins*, 795 F.3d at 654).

Here, the Settlement Class is defined as "all persons in the United States who, from March 12, 2022, to and through August 22, 2024: (1) have or had a Facebook account; (2) also

13

had a digital subscription to Themis Bar Review; and (3) who viewed videos on Themis's website while their Facebook membership was active." (Settlement § 1.28.) This definition is—as required—clear and based on objective criteria. Furthermore, while the "weak" version of ascertainability used in this Circuit does not require the actual identification of all class members, *T.K.*, 2022 WL 888943 at *2–3, here, all Settlement Class Members can be readily identified through Defendant's records.

Because the proposed Settlement Class satisfies all of Rule 23(a) and (b)'s explicit requirements for certification, as well as the implicit ascertainability requirement, the Settlement Class can be certified for purposes of settlement and for purposes of entering final judgment after final approval, if granted.

### B. The Proposed Settlement Warrants Preliminary Approval

In addition to showing that the Settlement Class is certifiable, the parties must also show that the Court "will likely be able to … approve the [settlement] proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The proposed Settlement in this case easily satisfies these requirements.

### 1. Plaintiff and Proposed Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This factor "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R.

14

Civ. P. 23 Advisory Committee's Notes to 2018 Amendment (hereinafter "2018 Committee Notes"). Ultimately, where the named plaintiff "participated in the case diligently … [a]nd class counsel fought hard throughout the litigation," *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019), and where "Class Counsel had 'an adequate information base' while negotiating for the settlement," *T.K.*, 2022 WL 888943 at *11 (quoting 2018 Committee Notes), this factor is satisfied.

Here, Plaintiff diligently participated in the case by helping Class Counsel investigate her claims, assisting in the preparation of and reviewing the Complaint before filing, becoming familiar with the case more generally, keeping up to date on the case and the status of settlement negotiations, and reviewing and approving the Settlement Agreement before signing it. (Fraietta Decl. ¶ 20.) In other words, she has and continues to adequately represent the Settlement Class.

Class Counsel's performance in this case likewise satisfies this factor. They "fought hard throughout the litigation," briefing Defendant's attempt to dismiss the case, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379 at *4. Prior to settling, the Parties exchanged formal and informal discovery, as well as multiple mediation briefs, providing Class Counsel with "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943 at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case").

### 2.      The Settlement Was Negotiated at Arm's Length.

Like the first rule 23(e)(2) factor, the second factor—whether the settlement was negotiated at arm's length—addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. And again, this factor is satisfied here.

The arm's-length-negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943 at *11 (internal quotation omitted). Here, there was no collusion between Class Counsel and Defendant to take advantage of the Class. A settlement was reached only after a failed mediation in November 2024, followed by months of additional negotiation at arm's length while simultaneously advancing their respective positions on Defendant's then-pending motion to dismiss.

In addition, "[t]he best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943 at *11 (internal quotations omitted). And while the case did not settle at the mediation, Judge Holderman's assistance helped set the table for ultimate resolution of the dispute. *See, e.g., Charvat*, 2019 WL 5576932 at *5 (finding arm's-length negotiation factor met where "[t]he parties attended a full day of mediation that, after initially failing to result in a settlement, finally jumpstarted negotiations between the parties"); *Young v. Rolling in the Dough, Inc.*, No. 17-cv-07825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (recognizing class settlement "clearly" the product of arm's-length negotiation where agreement reached only after a contested motion, extensive discovery, and an unsuccessful settlement conference before a magistrate judge).

What's more, the arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides higher cash payments than comparable VPPA and CIPA settlements to Settlement Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as a "clear sailing" or "kicker" clause regarding attorneys' fees. *See Snyder*, 2019 WL 2103379 at *4 (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that

sometimes suggest something other than an arm's-length negotiation").

### 3. The Relief Provided for the Class Is Adequate.

The next Rule 23(e)(2) factor—whether "the relief provided for the class is adequate"—includes four express considerations to take into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations favors finding that the relief provided here is more than adequate.

#### a) The Benefits Of Settlement Outweigh The Cost, Risk, And Delay Of Further Litigation.

Although the "costs, risks, and delay" consideration was not expressly included in Rule 23 until 2018, the Seventh Circuit has long required courts to consider "the strength of plaintiff's case on the merits balanced against the amount offered in settlement," as well as the "likely complexity, length and expense of the litigation." *T.K.*, 2022 WL 888943 at *12 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). That precedent informs the Court's assessment of the "costs, risks, and delay" consideration of Rule 23(e)(2)(C)(i). *Id.*; *see also* 2018 Committee Notes (explaining that 2018 amendment's listing of settlement approval factors was not meant to displace any court-made factors, but simply to focus courts and parties on a shorter list of core concerns). Here, when balanced against the downsides of continued litigation, the benefits of the proposed Settlement are clear.

The Settlement Agreement creates a non-reversionary fund of $2,250,000 covering the VPPA and CIPA claims of 53,980 potential Settlement Class Members. Assuming a 15–25% claims rate, Class Counsel estimate that each claiming Settlement Class Member will receive a

net payment of $263-$526. This recovery per claiming Settlement Class Member far exceeds comparable VPPA and CIPA settlements. *See, e.g.*, *Jackson v. Fandango Media, LLC*, Case No. 2023LA000631 (Ill. Cir. Ct. DuPage Cnty.) (providing claiming class members $5 cash payment or $15 movie ticket voucher); *Beltran et al v. Sony Pictures Entertainment, Inc.*, 1:22-cv-04858 (N.D. Ill.) (providing approximately $30 per class member); *Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP (C.D. Cal.) (providing approximately $6.45 per class member). Furthermore, in addition to the monetary relief, as a result of the litigation, Themis has stopped engaging in the disputed conduct.

Importantly, this relief to the Settlement Class is immediate, avoiding potentially years of complex litigation and appeals. *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Furthermore, the risk of obtaining *no* relief through continued litigation is significant, especially in the context of a rapidly evolving landscape of claims brought under the VPPA. While the Court could have granted Defendant's motion to dismiss, Defendant would re-raise many of its arguments at summary judgment or on appeal. Moreover, Defendant was prepared to raise a host of defenses at class certification, any one of which, if successful, would leave the Class with no recovery at all. Moreover, adversarial class certification includes an additional consideration—manageability—not required for certification as part of a settlement. *Wright*, 2016 WL 4505169 at *3 (citing *Amchem*, 521 U.S. at 619-20). "With this increased focus on manageability, individual issues that would not prevent certification of a settlement-only class may bar certification for adjudication." *T.K.*, 2022 WL 888943 at *13 (quotations omitted).

In short, "any relief to class members would still be far down the road and may ultimately

be entirely denied." *Charvat*, 2019 WL 5576932 at *7. In contrast, "[a]pproving the proposed

settlement agreement will end the case and cause benefits to flow in short order." *Id*; *see also*

*Young*, 2020 WL 969616 at *5 ("If this case had been litigated to conclusion, all that is certain is

that plaintiffs would have spent a large amount of money, time, and effort.").

**b)**      **The Proposed Method Of Distributing Relief To The Settlement Class Is Effective.**

The "method of distributing relief" consideration looks to whether the methods proposed

for processing claims are "so complex that they discourage class members from pursing valid

claims." *T.K.*, 2022 WL 888943 at *14. "A requirement that potential claimants fill out a form in

order to collect from the settlement fund seldom raises such concerns." *Id*. That's all that's

required from Settlement Class Members here. (Settlement §§ 1.2, 1.4, 2.1(a).) The Claim Form

"is not unduly burdensome, long, or complex." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560,

591 (N.D. Ill. 2011). "All information called for on the form is required of the claims

administrator in order for it to process claims." *Id*. Furthermore, "[t]he parties' use of a

settlement website … suggests that the claims process was designed to encourage—not

discourage—the filing of claims." *Id*. "For example, the ability to submit a claim online through

the settlement website allow[s] Class Members to submit a claim without the need to pay for a

stamp." *Id*. The Settlement also offers Class Members several easy options for receiving their

payment, including Venmo, Zelle, Paypal, or check. (Settlement § 2.1(b).)

"In addition to the method of submitting a claim, courts must also consider how claims

are paid out." *T.K.*, 2022 WL 888943 at *14. "Courts are especially wary of complex claims

processes paired with either claims-made settlements, distributing only the amount actually

claimed by the class members, or reversionary funds." *Id*. (quotations omitted). The Settlement

here is neither; Defendant will pay $2,250,000 to the Settlement Fund regardless of the number

19

of claims filed, with no possibility of reversion. Consequently, "it seems unlikely that the claims process is designed to limit the 'take rate' of Class Members." *Schulte*, 805 F. Supp. 2d at 591. *See also T.K.* 2022 WL 888943 at *15 ("[B]ecause no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendant[] or class counsel.").

**c)     The Terms Of The Requested Attorneys' Fees Are Reasonable.**

The next consideration under Rule 23(e)(2)(C)'s evaluation of the adequacy of relief are "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel intends to petition the Court for an award of attorneys' fees not to exceed 35% of the net Settlement Fund remaining after payment of Settlement Administration Expenses and a service award. "[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit," and "the typical fee [is] between 33 and 40 percent." *T.K.*, 2022 WL 888943 at *24 (quotations omitted); *see also*, *e.g.*, *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, Dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of fund); *Lopez-McNear*, No. 19-cv-2390, Dkt. 69 (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, Dkt. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund). Again, there is no clear-sailing agreement, and the Settlement Agreement permits Defendant to challenge the amount of any fees requested. (Settlement § 8.1.)

As will be discussed further in a subsequently filed fee petition, the attorneys' fees sought "are reasonable in light of the Class Counsel's work, their investment of resources in the case, their prosecution of the action for the benefit of the Settlement Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved." *T.K.*, 2022 WL 888943 at *15. For the immediate purposes of evaluating the adequacy of relief under Rule 23(e)(2)(C), however, the important thing to note is that the Court's decision on settlement approval is

20

completely distinct from its determination of fees. *Id*. ("Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval of the Settlement.").

        **d)     There Are No Side Agreements Separate From The Settlement Agreement.**

The last consideration in Rule 23(e)(2)'s assessment of the adequacy of relief requires this Court to take into account "any agreement made in connection with the [proposed settlement]." Fed. R. Civ. P. 23(e)(2)(C)(iv), (3). This consideration ensures that the Court is aware of any "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2003 Amendment. Here, there are no such agreements; all terms and agreements affecting Settlement Class Members are contained within the Settlement Agreement.

In sum, each of the four express considerations of Rule 23(e)(2)(C)'s adequacy of relief requirement suggest that this factor is satisfied here.

        **4.     The Settlement Treats Class Members Equitably.**

In addition to adequate representation, arm's-length negotiation, and adequacy of relief, the final factor in determining whether a proposed settlement is fair, reasonable, and adequate—and thus deserving of preliminary approval—is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Generally, a settlement that provides for pro rata shares to each class member will meet this standard." *T.K.*, 2022 WL 888943 at *15; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 840–41 (1999) (describing pro rata distribution of fund as a "straightforward model[] of equitable treatment"). That's precisely what the Settlement Agreement provides here: each claiming Settlement Class Member will

receive a *pro rata* share of the Settlement Fund. Admittedly, Plaintiff seeks a service award for herself and, if approved, would therefore receive marginally more of the Settlement Fund than other Class Members. But "equitably relative to each other" does not mean "equally to each other," and absent unusual circumstances, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943 at *15–16 (service awards did not render treatment of class members inequitable, noting that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted). The proposed Settlement Agreement treats all Class Members equitably relative to each other, and all four Rule 23(e)(2) factors thus support preliminary approval here.

### C. The Proposed Notice Plans Should Be Approved in Form and Substance

As shown above, the proposed Settlement Class can be certified, and the proposed Settlement Agreement can be approved. Consequently, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Furthermore, because Plaintiff seeks certification under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be provided to the Settlement Class via "United States mail, electronic means, or other appropriate means," and must describe "clearly and concisely … in plain, easily understood language" the nature of the action, the definition of the Settlement Class, the claims and defenses at issue, class members' right to appear through counsel if so desired, class members' right to request exclusion from the Settlement Class, the time and manner for requesting exclusion, and the binding effect of a class judgment on all Settlement Class Members. *Id.*

Here, the Settlement Agreement sets out a comprehensive notice plan focused on providing direct notice and a reminder notice to all Settlement Class Members via email and, as appropriate, U.S. Mail. Themis will provide the Settlement Administrator with a list of all Settlement Class Members' names and email addresses. (Settlement § 4.1.) The Settlement Administrator will send direct notice to all Settlement Class Members for whom a valid email address is contained in the Settlement Class List. (*Id*. § 4.2(b).) That email will contain a link to the Claim Form and otherwise describe the Settlement. (*Id.*, Exhibit C.) For any emails that result in a "bounce-back," the Settlement Administrator will attempt to resend the email. (*Id.* § 4.2(b).) Two subsequent reminder emails will be sent, one thirty days and one seven days prior to the Claims Deadline; if the number of Claim Forms submitted does not equal at least ten percent of the Settlement Class. (*Id.* § 4.2(c), Exhibit C.)

Finally, the Settlement Administrator will establish and maintain a Settlement Website, which will include notice of the Settlement Agreement, relevant case documents, and the ability to file Claim Forms online or download them in hardcopy form. (*Id.* § 4.2(d).)

All in all, the proposed notice plan is designed to provide information about the proposed Settlement Agreement and Settlement Class Members' rights under it in plain, easily understood language directly to all Settlement Class Members. It is the best notice practicable, and this Court should approve the notice plan as set forth in the Settlement Agreement.

## V.  PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Finally, if, as requested, this Court finds that the Settlement Class is certifiable, it should appoint Plaintiff's counsel as class counsel. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserting in the action, (iii) counsel's knowledge of the

23

applicable law, and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed in Section IV(A)(4) above, proposed Class Counsel have extensive experience in litigating consumer privacy class actions; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. *See* Fraietta Decl. ¶¶ 11-13, 19; Exhibit 3. All of the Rule 23(g)(1)(A) considerations thus support the appointment of Plaintiff's counsel as Class Counsel in this case. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2020 WL 4345418, at *8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element into the class certification process.") (quotations omitted). This Court should do the same here.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order (1) preliminarily approving the proposed Settlement Agreement; (2) certifying the proposed Settlement Class for settlement purposes with Plaintiff Aimee Krause serving as class representative; (3) directing that notice be provided to Settlement Class Members pursuant to the notice plan set forth in the Settlement Agreement; (4) appointing Philip L. Fraietta and Alec M. Leslie as Class Counsel, (5) scheduling a final fairness hearing in this matter, and (6) providing such other and further relief as the Court deems reasonable and just.[3]

Dated: September 16, 2025                          Respectfully submitted,

                                                   */s/ Philip L. Fraietta*

---

[3]        Plaintiff will submit a proposed Preliminary Approval order through the Court's proposed order email inbox.

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: pfraietta@bursor.com
          aleslie@bursor.com

*Proposed Class Counsel*

J. Dominick Larry
**NICK LARRY LAW LLC**
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Local Counsel*