**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SOPHIA SAHAGÚN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THEMIS BAR REVIEW, LLC,<br><br>*Defendant*. | Case No. 1:24-cv-02065 |

**PLAINTIFF'S BRIEF IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS


PAGE(S)

I. INTRODUCTION ..... 1
II. FACUTAL AND PROCEDURAL BACKGROUND ..... 2
III. TERMS OF THE SETTLEMENT AGREEMENT ..... 4
A. Class Definition ..... 5
B. Monetary Relief ..... 5
C. Payment of Settlement Administration Expenses ..... 5
D. Attorney's Fees and Incentive Award ..... 5
E. Release ..... 6
IV. THE CLASS NOTICE FULLY SATISFIED DUE PROCESS ..... 6
V. THE SETTLEMENT WARRANTS FINAL APPROVAL ..... 8
A. Plaintiff and Class Counsel Adequately Represented the Class. ..... 9
B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations. ..... 11
C. The Settlement Treats Class Members Equally ..... 12
D. The Relief Secured for the Settlement Class Is Adequate and Warrants Final Approval ..... 12
1. The Settlement Provides Exceptional Relief ..... 13
2. The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval ..... 14
3. The Method of Distributing Relief to the Settlement Class Is Effective and Supports Final Approval ..... 16
4. The Terms of the Requested Attorney's Fees are Reasonable ..... 17
E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement ..... 18
1. The Reaction of the Settlement Class Favors Approval ..... 18
2. Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval ..... 20
3. The Settlement Raises No Red Flags ..... 20
VI. THE LONE OBJECTION SHOULD BE OVERRULED ..... 21
VII. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2011 WL 3290302 (N.D. Ill. July 26, 2011) .......... 10

*Am. Int'l Grp., Inc.*, *v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D. Ill. 2012) .......... 18

*Carver v. Foresight Energy LP*,
2016 WL 9455818 (C.D. Ill. Oct. 25, 2016) .......... 23

*Chambers v. Together Credit Union*,
2021 WL 1948453 (S.D. Ill. May 14, 2021) .......... 9

*Charvat v. Valente*,
2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) .......... 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......... 6

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) .......... 20, 21

*Golan v. FreeEats.com, Inc.*,
930 F.3d 950 (8th Cir. 2019) .......... 15

*Goldsmith v. Tech. Sols. Co.*,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .......... 14

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) .......... 13, 15

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .......... 18

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......... 19

*In re NCAA Student-Athlete Concussion Injury Litig.*,
332 F.R.D. 202 (N.D. Ill. 2019) .......... 9

*In re TikTok, Inc., Consumer Privacy Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. July 28, 2022) .......... 17, 22

*In re Vizio, Inc., Consumer Privacy Litig.*,
2019 WL 12966638 (C.D. Cal. July 31, 2019) ........................................................ 13

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. Nov. 23, 2015) ........................................................ 18, 19

*Lane v. Facebook, Inc.*,
2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) ........................................................ 13

*Leung v. XPO Logistics, Inc.*,
326 F.R.D. 185 (N.D. Ill. 2018) ........................................................ 18

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........................................................ 15

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ........................................................ 8

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ........................................................ 8

*Retsky Family Ltd. P'ship*,
2001 WL 1568856 (N.D. Ill. 2001) ........................................................ 20

*Schulte v. Fifth Third Bank*,
2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ........................................................ 12

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................ Passim

*Snyder v. Ocwen Loan Servicing, LLC*,
2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ........................................................ 9

*Snyder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019) ........................................................ 8, 10, 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ........................................................ 9

*T.K. Through Leshore v. Bytedance Technology Co., Ltd.*,
2022 WL 888943 (N.D. Ill. 2022) ........................................................ 10, 12

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
309 F.3d 978 (7th Cir. 2002) ........................................................ 8

*United States v. Dish Network L.L.C.*,
954 F.3d 970 (7th Cir. 2020) ........ 15

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ........ Passim

**STATUTES**

18 U.S.C. § 2710 ........ 1

Cal. Penal Code § 630 ........ 1

**RULES**

Fed. R. Civ. P. 23 ........ Passim

Fed. R. Civ. P. 26 ........ 3

**OTHER AUTHORITIES**

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N (Sept. 2019) ........ 19

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) ........ 6, 22

Newberg on Class Actions (5th ed.) ........ 16

Pursuant to the Court's October 30, 2025 Preliminary Approval Order, Sophia Sahagún ("Plaintiff") respectfully moves for final approval of the Class Action Settlement Agreement entered between the Parties to this Action, a true and correct copy of which is attached as Exhibit 1 to the Declaration of Philip L. Fraietta ("Fraietta Decl.") filed herewith.[1]

## I. INTRODUCTION

Plaintiff Sophia Sahagún ("Plaintiff") alleges that Defendant Themis Bar Review, LLC (Plaintiff and Defendant are collectively referred to as the "Parties") disclosed its subscribers' personally identifiable information to Facebook without permission in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq*. (the "VPPA") and the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq*. ("CIPA"). After an unsuccessful full-day mediation with Hon. James F. Holderman (Ret.), followed by extensive negotiations spanning many months, the Parties have reached a settlement wherein Themis will establish a non-reversionary Settlement Fund of $2,250,000 as per the Settlement Agreement.

On October 30, 2025, the Court preliminarily approved the Settlement and directed that notice be sent to the Settlement Class. The Settlement Administrator has implemented the Court-approved notice plan and direct notice has reached approximately 78.7% of the identified potential Settlement Class. *See* Declaration of Cameron Azari ("Azari Decl.") ¶¶ 18, 27. The reaction from the Settlement Class has been overwhelmingly positive. Of the 56,387 identified potential Settlement Class Members, only one has objected,[2] and only six have requested to be excluded. Azari Decl. ¶ 31. The Settlement is an excellent result for the Class and the Court should have no

---

[1] Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in the Definitions section of the Settlement Agreement.

[2] The objector also timely submitted a claim form that appears to be valid. Nonetheless, the objection should be overruled for the reasons set forth in Section § VI, *infra*.

hesitation in granting final approval.

The Settlement's strength speaks for itself: Defendant shall fund a settlement of $2,250,000 from which every Settlement Class Member who submits a valid and timely Claim Form will receive a *pro rata* cash payment. Settlement ¶¶ 1.30, 2.1(b); *see also* Fraietta Decl. ¶ 22. With a claims rate of approximately 21%, each claiming Settlement Class Member will receive a payment of around $120. The Settlement also provides meaningful prospective relief as Defendant has also ceased engaging in the disputed conduct.

Critically, the value achieved through the Settlement Agreement is guaranteed while chances of prevailing on the merits are far from certain. While Plaintiff believes she would ultimately prevail on her claims, she is also aware that Defendant firmly denies all wrongdoing and would have vigorously pursued several legal and factual defenses. If Defendant was successful on any one of its defenses, Plaintiff and the Class Members would receive no recovery whatsoever. *See* Fraietta Decl. ¶ 24. Indeed, other Facebook Tracking Pixel-based VPPA cases have failed at the motion to dismiss stage. *See* Fraietta Decl. ¶ 25 (citing cases). And similar cases failed later on. *Id*. ¶ 26. Taking these realities into account and recognizing the risks involved in any litigation, the relief available to each Settlement Class Member represents a truly excellent result for the Settlement Class, especially since the recovery made available here meets or exceeds VPPA settlements and other privacy settlements that came before it.

As explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## II. FACUTAL AND PROCEDURAL BACKGROUND

Though Plaintiff has detailed the case background in her preliminary approval motion and motion for attorneys' fees (Dkt. Nos. 78, 85-86), it is set forth below for ease of reference.

Plaintiff filed this class action lawsuit on March 12, 2024 (Dkt. No. 1) (the "Compl."). Plaintiff alleges that Defendant, a prominent test preparation service company that offers educational legal video lectures through its website, violated the VPPA and CIPA due to Defendant's installation and use of the Facebook Tracking Pixel on Defendant's website, themisbar.com. Compl. ¶¶ 3-4. Specifically, Plaintiff alleges the Facebook Tracking Pixel "permits an ordinary person to identify what video an individual has watched" and that "themisbar.com contains the code for at least eight different Facebook cookies[.]" *Id*. ¶¶ 30-31. Plaintiff further alleges that, when someone who is logged into Facebook watches a video on Defendant's website, the Facebook Tracking Pixel transmits personally identifiable information to Facebook along with that user's Facebook ID. *Id*. ¶ 32. With the information Facebook allegedly receives from the Themis website via the Facebook Tracking Pixel, it permits Facebook to see who watched what video. *Id*. ¶ 34. This, Plaintiff alleges, constitutes a violation of the VPPA and CIPA.

Defendant moved to dismiss Plaintiff's Complaint on May 28, 2024. Dkt. No. 14. Defendant also moved to stay discovery pending its motion to dismiss on June 20, 2024. Dkt. No. 29. The Court granted Defendant's motion to stay discovery. Dkt. No. 31. Plaintiff opposed Defendant's motion to dismiss on July 12, 2024 (Dkt. No. 38), and Defendant filed its reply brief on August 1, 2024. Dkt. No. 41. While Defendant's motion was pending, the Parties respectively filed multiple notices of supplemental authority and responses thereto, apprising the Court of recent developments relevant to the claims at issue. Dkt. Nos. 60, 63, 64, 65, 68, 69, 70. Since the pendency of Plaintiff's lawsuit, as the Parties are required to do so under Fed. R. Civ. P. 26, the Parties had arm's-length discussions about the possibility of settlement. Fraietta Decl. ¶ 11. To that end, the Parties ultimately agreed to participate in a private mediation. In order to allow the Parties to meaningfully engage at the mediation, they engaged in informal discovery in advance.

*Id*. Plaintiff sought data reflecting the potential class size and information about the metrics Defendant maintained regarding visits to and interactions with its website, which Defendant provided. *Id*. ¶ 12. With this data in hand, the Parties exchanged detailed and thorough mediation statements, which addressed relevant facts, the strength of the claims and defenses at issue, and recent in the VPPA and CIPA settlement landscape. *Id*. ¶ 13. The Parties then virtually attended a full-day mediation session with Hon. James F. Holderman (Ret.) on November 19, 2024. *Id*. ¶ 14. Despite multiple rounds of back-and-forth negotiations facilitated by Judge Holderman, the Parties were unable to reach an agreed resolution during the mediation. *Id*.

Over the following several months, the Parties continued to discuss the possibility of settlement at arm's length, while simultaneously submitting notices of supplemental authority (and responses thereto) to the Court regarding Defendant's pending motion to dismiss. *Id*. ¶ 15. The parties also engaged in formal discovery, serving and responding to written discovery. In tandem with these litigation efforts, the Parties continued arm's-length negotiations and were ultimately able to reach a settlement in principle. *Id*. ¶ 16. The Parties spent approximately two months negotiating the final details of the Settlement Agreement. *Id*. ¶ 17.

The Parties executed the Settlement Agreement on September 15, 2025. Plaintiff then promptly moved for preliminary approval of the class action settlement (Dkt. No. 78), which the Court granted on October 30, 2025 (Dkt. No. 80).

## III. TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Class Action Settlement Agreement, (Fraietta Decl., Ex. 1), and are briefly summarized here.

### A. Class Definition

In the Preliminary Approval Order, the Court certified the Settlement Class as "All persons in the United States who, from March 12, 2022, to and through August 22, 2024: (1) have or had a Facebook account; (2) also had a digital subscription to Themis Bar Review; and (3) who viewed videos on Themis's website while their Facebook membership was active."

### B. Monetary Relief

Each Settlement Class Member who submits a valid Claim Form shall be entitled to payment of a *pro rata* share of the $2.25 million Settlement Fund after payment of Settlement Administration Expenses, attorney's fees and costs, and the incentive award, if approved by the Court. Settlement § 2.1(a). With an approximate claims rate of 21%, each claiming Settlement Class Member will receive a payment of around $120. Fraietta Decl. ¶ 22. No portion of the Settlement Fund will revert to Defendant should the settlement be approved. Settlement § 2.1(f).

### C. Payment of Settlement Administration Expenses

All notice and administration costs shall be paid from the Settlement Fund. *Id*. § 1.30. This includes all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing settlement payments, and any related expenses.

### D. Attorney's Fees and Incentive Award

Class Counsel is entitled to seek reasonable attorney's fees in an amount to be determined by the Court. Settlement § 8.1. Class Counsel seeks 35% of the Settlement Fund, which is inclusive of costs and expenses. Defendant has also agreed, subject to Court approval, to pay Plaintiff a service award in the amount of $5,000 in recognition of her efforts as Class Representative. *Id*. § 8.3. Plaintiff moved separately for these payments on January 23, 2026. Dkt. Nos. 85-86.

### E. Release

Each Settlement Class Member will release Themis from all past and present claims arising from or related to the use of pixel tracking technology on its website, such as claims under the VPPA, CIPA, or other analog state and federal wiretapping statutes. Settlement §§ 1.23-1.25, 3.1.

## IV. THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Prior to granting final approval to this Settlement, the Court must consider whether the Settlement Class Members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) ("*Schulte I*"). The "best notice practicable" does not necessarily require receipt of actual notice by all Settlement Class Members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010).[3]

The Parties engaged Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Settlement Administrator") to implement the Notice Plan. Themis provided Epiq with a class list for purposes of providing direct notice which contained records for 56,396 unique Settlement Class Members. Azari Decl. ¶ 22. On December 23, 2025, Epiq commenced sending 57,060 Email Notices to 56,387 identified Settlement Class Members for whom a valid email address was available. *Id.* ¶ 23. If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier. For Email Notices for which a bounce code was received

[3] Available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical autoreplies, etc., Epiq made at least two additional attempts were made to deliver the Notice by email. *Id.* ¶ 25.

Epiq also sent two rounds of reminder notices to all identified Settlement Class Members. *Id.* ¶ 32. The first reminder notices were sent via email on January 7, 2026, and the second reminder notices were sent via email on January 30, 2026. *Id.* Notice was ultimately successfully delivered to 44,408 of the 56,396 unique, identified Settlement Class Members. *Id.* ¶ 27. Thus, notice reached approximately 78.7% of the Settlement Class. *Id*.

On December 22, 2025, Epiq established a toll-free telephone number for the Settlement. The automated phone system was made available 24 hours per day, 7 days per week. *Id*. ¶ 29. Also on December 22, 2025, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.ThemisVPPASettlement.com). *Id*. ¶ 28. Relevant documents were posted on the Settlement Website, including the Long Form Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, and other case-related documents. *Id*. In addition, the Settlement Website included relevant dates, answers to frequently asked questions, instructions for how Settlement Class Members could request exclusion from or object to the Settlement prior to the deadlines, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id*. Settlement Class Members were also able to file an online Claim Form on the Settlement Website prior to the Claims Deadline. *Id*.

Overall, the Notice program was highly successful as it reached more than 78% of the Settlement Class, and those notices were supplemented with two rounds of reminder notices, resulting in an exceptional participation rate. This readily satisfies what is required for due process.

## V. THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

The Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" and the Court should therefore also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d

859, 863 (7th Cir. 2014) (internal quotations omitted); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). District courts in this Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding Seventh Circuit analogues demonstrates that the Settlement is fair, reasonable, adequate, and warrants final approval.

**A. Plaintiff and Class Counsel Adequately Represented the Class.**

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018); *see also Chambers v. Together Credit Union*, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery"). In considering this factor, courts examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

The knowledge and negotiating position, participation, and conduct of Ms. Sahagún and Class Counsel have not changed since this Court granted preliminary approval, which made an analogous finding of adequacy. Dkt. No. 80. Plaintiff's interests have remained aligned with the Settlement Class through the Notice process and preparation for final approval. Without Plaintiff shouldering the burden to represent the class and taking on these tasks as the lead Plaintiff, the relief secured for the Settlement Class would not have been possible. Given her efforts and aligned interest with the Settlement Class, there can be no doubt that Ms. Sahagún has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, Class Counsel "fought hard throughout the litigation," opposing Defendant's attempt to dismiss the case, engaging in discovery, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379 at *4. Prior to mediation, the Parties exchanged informal discovery, as well as mediation statements, providing Class Counsel with "an adequate information base" on which to negotiate before Hon. James F. Holderman. *T.K.*, 2022 WL 888943 at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case"). Despite multiple rounds of back-and-forth negotiations facilitated by Judge Holderman, the Parties were unable to reach a resolution during the mediation.

But over the ensuing months, the Parties continued to discuss the possibility of settlement at arm's length, while simultaneously submitting notices of supplemental authority (and responses thereto) to the Court regarding Defendant's pending motion to dismiss. *See* Fraietta Decl. ¶ 15. The Parties also engaged in formal discovery, serving and responding to written discovery. In tandem with these litigation efforts, the Parties continued arm's-length negotiations and were

ultimately able to reach a settlement in principle. *Id.* ¶ 16. The Parties spent approximately two months negotiating the final details of the Settlement Agreement that was ultimately executed. *Id.* ¶ 17. Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

**B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.**

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates nothing but good-faith, non-collusive bargaining between the Parties. The Parties agreed to, and virtually attended, a full-day mediation session with Hon. James F. Holderman (Ret.) on November 19, 2024. Fraietta Decl. ¶ 14. During the mediation, despite both Parties' efforts, the Parties were unable to reach an agreed resolution. *Id.* The Parties returned to litigation, where they engaged in formal discovery, serving and responding to written discovery. *Id.* ¶¶ 15-16. In tandem with these litigation efforts, the Parties renewed their settlement discussions, picking up where they left off following the settlement conference with Judge Holderman. *Id.* After several months of additional arm's-length negotiations, the Parties were ultimately able to reach a settlement-in-principle. *Id.* ¶ 16. The Parties then spent the next ensuing months negotiating the outstanding terms of the full, written agreement, eventually executing the Settlement Agreement on September 15, 2025. *Id.* ¶ 17.

The arm's-length nature of these negotiations is further confirmed by the Settlement itself. It is non-reversionary, provides significant cash payments to the Settlement Class Members who submitted a simple Claim Form, and contains no provisions that suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that

sometimes suggest something other than an arm's-length negotiation"). For these reasons, there should be no question that the Settlement was the result of good-faith, arm's-length negotiations free from fraud or collusion. *See Schulte v. Fifth Third Bank*, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal quotations omitted).

### C. The Settlement Treats Class Members Equally

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). That is precisely what the Settlement provides here. Each claiming Settlement Class Member will receive a *pro rata* share of the Settlement Fund. And while Plaintiff seeks a service award for herself that, if approved, would have her receive marginally more of the Settlement Fund than other Class Members, this is not problematic. "[E]quitably relative to each other" does not mean "equally to each other," and absent unusual circumstances not present here, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943 at *15-16 ("Because class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted).

### D. The Relief Secured for the Settlement Class Is Adequate and Warrants Final Approval

The final and most crucial factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors for the Court to consider, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any side agreements made in connection with the settlement. *Id.* This analysis necessarily encompasses

two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (internal quotations omitted). This Settlement does so.

**1. The Settlement Provides Exceptional Relief**

Given the uncertain legal landscape and the possibility that the Settlement Class would recover nothing at all, the relief secured by Class Counsel is exceptionally strong. The Settlement provides outstanding monetary relief that excels when compared to other privacy class action settlements. As stated *supra*, with an approximate claims rate of 21%, splitting up the $2,250,000 fund across the thousands of Settlement Class Members that submitted valid Claim Forms (after deducting any notice costs, and any approved attorneys' fees and costs, and incentive awards) means that each claiming Settlement Class Member will be paid approximately $120.

Even with a high claims rate, the recovery amount per claiming Settlement Class Member far exceeds comparable VPPA and CIPA settlements. *See, e.g., Lane v. Facebook, Inc.*, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010), *aff'd* 696 F.3d 811 (9th Cir. 2012) (approving settlement in VPPA case that only provided *cy pres* relief with no monetary relief to Settlement Class Members); *In re: Vizio, Inc., Consumer Privacy Litig.*, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%); *Beltran et al v. Sony Pictures Entertainment, Inc.*, 1:22-cv-04858 (N.D. Ill.) (class member recovery of approximately $30 per person alleging violation of VPPA); *Stark v. Patreon, Inc.*, Case No. 3:22-cv-3131 (N.D. Cal.) (class member recovery of approximately $35 per person alleging violation of VPPA); *Palma v. Formula One Digital Media Ltd.*, Case No.

2025LA00000329 (Lake Cnty. Cir. Ct. 19th Jud. Cir.) (class member recovery of approximately $17 per person alleging violation of VPPA).

Both the monetary and prospective relief secured here are excellent and should be finally approved.

**2. The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval**

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here meets both the 23(e)(2)(C) requirements and the relevant Seventh Circuit considerations because it provides immediate relief to the Settlement Class while avoiding potentially years of risky litigation and appeals, with both Plaintiff and Defendant believing that they have strong cases for their side. *See Schulte I*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). The risks here to Plaintiff and the putative class were not insignificant.

To start, the value achieved through the Settlement Agreement is guaranteed while chances of prevailing on the merits are far from certain. While Plaintiff believes she would likely prevail on her claims, she is also aware that the Defendant firmly denies all charges of wrongdoing or liability and the material allegations of the Complaint and intended to pursue several legal and factual defenses. If Defendant was successful on any one of these defenses, Plaintiffs and the Class Members risk receiving no relief whatsoever. Fraietta Decl. ¶¶ 24, 27. Due at least in part to their

cutting-edge nature and the rapidly evolving law, privacy cases—including Facebook Pixel cases such as this one—generally face substantial hurdles, even just to make it past the pleading stage.

Class certification is another hurdle where success is certainly not guaranteed. Plaintiff would be required to expend significant resources to litigate the issue of class certification. The Advisory Committee notes to amended Rule 23(e) suggest that courts should consider the likelihood of certifying a class for litigation in evaluating this factor because the issue of litigating class certification is a salient one. While Plaintiff believes that she would ultimately prevail on certification issues given Defendant's uniform conduct, class certification is still a significant hurdle and presents a risk to any class recovery. Even if adversarial class certification were granted, the further possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (affirming class certification on interlocutory appeal in BIPA case filed four years earlier). And assuming Plaintiff would have succeeded at trial, Plaintiff reasonably expects that Defendant would have argued for a reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million), *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process).

As the foregoing makes clear, there is no guarantee that the Settlement Class Members would receive any benefit from protracted litigation. Such protracted litigation is costly and time consuming, and it is possible that it "would provide [c]lass [m]embers with either no in-court recovery or some recovery many years from now . . ." *In re AT & T Mobility Wireless Data Servs.*

*Sales Tax Litig.*, 789 F. Supp. at 964. But "[i]f the Court approves the [Settlement], the present lawsuit will come to an end and [Class Members] will realize both immediate and future benefits as a result." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). "Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation," and approval would allow the Class to receive meaningful and valuable payments now, instead of years from now or never. *Id.* at 582, 586 (internal citations omitted). Thus, in contrast to the substantial risks, expense, and delay that would accompany further litigation, the Settlement offers tangible, immediate relief to each Class Member. It also compares favorably to VPPA settlements and other privacy settlements that came before, representing a truly excellent result for the Class. This crucial factor therefore strongly supports final approval.

#### 3. The Method of Distributing Relief to the Settlement Class Is Effective and Supports Final Approval

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). Settlement distribution here is straightforward. Settlement Class Members could submit a claim either by mail or online. Those who submitted online had the option to select to receive their Settlement Payment by Venmo, Zelle, Paypal, or check. Settlement § 2.1(b). Should the Settlement be approved, the Settlement Administrator will distribute Settlement Payments to each Settlement Class Member who submitted a valid claim for their *pro rata* portion of the Settlement Fund. *See Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402, dkt. 92 (N.D. Ill. Feb. 16, 2022) (approving settlement where settlement administrator processed claims under counsel's oversight and distributed *pro rata* shares to class members with valid claims). If, after 180 days of issuance,

any electronic payments are unable to be processed or any checks go uncashed, those residual funds will revert to the Settlement Fund to be distributed *pro rata* to Settlement Class Members with approved claims if practicable, or in a manner as otherwise directed by the Court upon application made by any party. Settlement § 2.1(d). This well-recognized method of distributing monetary relief fully satisfies this aspect of Rule 23(e)(2)(C)(ii).

**4. The Terms of the Requested Attorney's Fees are Reasonable**

The third sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel separately petitioned the Court for an award of reasonable attorneys' fees after the Settlement Class received Notice and before the deadline to object. Dkt. Nos. 85-86. They also ensured that request was posted on the Settlement Website so that the Settlement Class had access to it. The Settlement's contemplated method of calculating attorneys' fees (*i.e.*, the percentage-of-the-fund method) and Class Counsel's request for thirty-five percent (35%) of the non-reversionary Settlement Fund is reasonable and predicated on the outstanding relief provided to the Settlement Class. Settlement § 8.1.

To be sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in virtually every class action settlement under a privacy statute in both federal and state courts in this District, and the requested percentage fee award is well in line with common fund fee awards in statutory privacy settlements in this District. *See, e.g., Moeller v. Am. Media, Inc.*, No. 16-cv-11367-JEL, dkt. 42 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement under Michigan state analog to the VPPA where case settled shortly after a decision on the motion to dismiss); *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. July 28, 2022) (awarding one-third of approximately $87.84 million settlement in data

privacy class action and noting that "a flat percentage fee of one-third of the net common fund is typical in other data privacy settlements"). In fact, courts in the Seventh Circuit have oftentimes awarded percentages of the fund higher than 35% in similar cases involving privacy statutes, like the TCPA, where, as here, the case was "riskier than the typical [statutory privacy] class action" and thus warranted a "risk multiplier" above the Seventh Circuit's 30% baseline for such cases. *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 805 (N.D. Ill. 2015) (awarding 36% of first $10 million of the fund in TCPA case, where the parties "had engaged in substantial motion practice and discovery," and they had done significant class-wide discovery during mediation); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding 36% of fund in TCPA case, where the court originally dismissed the plaintiff's claims "before reversing course on his motion to reconsider," which "demonstrate[d] that the risks … were real and significant"); *see also Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201 (N.D. Ill. 2018) ("[A] typical contingency agreement in this circuit might range from 33% to 40% of recovery."). Accordingly, the requested award is appropriate.

### E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement

In addition to the requirements that overlap with those now explicitly required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Settlement Class, the support of counsel, and the lack of red flags all favor approval.

#### 1. The Reaction of the Settlement Class Favors Approval

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*, 2012

WL 651727, at *6 (N.D. Ill. 2012). Here, the Settlement Administrator diligently implemented the Notice plan, and the objection and exclusion deadlines have passed with only one objection[4] to the Settlement. That only one person has objected to the Settlement out of over 56,000 Class Members is powerful evidence of the Settlement Class's support for the Settlement. *See Kolinek,* 311 F.R.D. at 495 ("[O]nly twenty individuals (0.0002209%) have objected to the settlement... Such a low level of opposition supports the reasonableness of the settlement."); *see also Charvat v. Valente*, 2019 WL 5576932, at *7 (N.D. Ill. Oct. 28, 2019) ("Opt-out and objection rates below 0.01% suggest that a settlement is reasonable."); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (finding the fact that more than "99.9% of class members have neither opted out nor filed objections" to be "strong circumstantial evidence in favor of the settlements").

Similarly, the 21% claims rate from the Settlement Class also indicates a robust positive reaction from the Settlement Class. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.,* cases weighted by the number of notice recipients) was 4%."). The rate at which the Settlement Class Members participated in this Settlement is consistent with settlements in other privacy class actions. *See Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate); *Kusinski, et al. v. ADP LLC*, 2017-CH-12364 (12.7% claims rate); *Thome v. NOVAtime Technology, Inc.*, No. 19-cv-6256, dkt. 90 (10% claims rate); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (5% claims rate).

---

[4] Plaintiff addresses the objection *infra* § VI.

The strong response rate combined with a total lack of objections and six opt-out requests thus strongly supports granting final approval to the Settlement.

### 2. Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte I*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship*, 2001 WL 1568856 (N.D. Ill. 2001), at *3 (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as discussed in Plaintiff's motion for preliminary approval (Dkt. No. 78 at 11, 23-24), Class Counsel are competent to give their opinion on this Settlement. For the reasons discussed above and in light of the positive response to the Notice, Class Counsel continues to believe that the Settlement provides outstanding monetary and prospective relief to the Settlement Class without the uncertainty and delay that years of litigation would bring. Fraietta Decl. ¶¶ 24-26. Thus, Class Counsel's opinion is that the Settlement is in the best interest of the Settlement Class, and this weighs in favor of final approval.

### 3. The Settlement Raises No Red Flags

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a single

class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no adverse subgroups in the class. Further, the Class Representative, Plaintiff Sahagún, has no familial relationship with Class Counsel or any member of their respective law firms. The claims process here was simple and straightforward: Class Members were able to submit the short, one-page Claim Form either online through the Settlement Website or by mail. Any unawarded attorneys' fees will be distributed to the claiming Settlement Class Members, not revert to Themis (Settlement § 8.1); no attorneys' fees will be paid to Class Counsel until after final approval of the Settlement; and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement.

In short, the Settlement displays no warning signs that should give this Court pause. The Settlement should therefore be finally approved.

## VI. THE LONE OBJECTION SHOULD BE OVERRULED

The Parties are aware of one objection to the Settlement submitted by Christopher Skambis on February 6, 2026. *See* Ex. 3 to Fraietta Decl. Mr. Skambis also submitted a timely claim form on the same day which the Parties are prepared to honor upon clarification from Mr. Skambis. Fraietta Decl. ¶ 31. Nonetheless, Mr. Skambis' contentions are addressed below.

First, Mr. Skambis claims that Class Counsel did not "take reasonable or sufficient steps to identify and notify members of the class" because he did not receive claim materials until one day before the submission deadline. Ex. 3 at 1. But notice here consisted of direct email notice along with two reminder email notices. Azari Decl. ¶¶ 27, 32. As such, the Court found that the Notice Plan "complies fully with the requirements of the Federal Rules of Civil Procedure." Dkt. No. 80. Furthermore, Epiq confirmed that notice reached 78.7% of the Settlement Class, well above the 70% rate considered reasonable. *See* Azari Decl. ¶ 18; *see also Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010).

Second, Mr. Skambis asserts that the claims process failed to provide an online filing option. Ex. 3 at 1. This is simply not true. A Settlement Website was established on December 22, 2025. Azari Decl. ¶ 28. As of February 9, there have been over 39,000 unique visitor sessions and 11,434 Class Members (representing over 95% of all claims filed) successfully submitted online claim forms. *Id.* ¶¶ 28, 34.

Third, Mr. Skambis claims that Class Counsel's request of attorney's fees totaling 35% of the settlement fund is unreasonable. Ex. 3 at 2. He argues that Class Counsel failed to adequately notify class members, failed to deliver a promised online claims process and implemented a claims procedure that "deter[red] recovery." *Id.* But Class Counsel, alongside the Settlement Administrator, followed the Court-approved Notice Plan which resulted in direct email notice reaching over 78% of the Settlement Class, which resulted in an excellent 21% participation rate. These efforts, alongside "indicia of trustworthiness—third-party mediation, extensive confirmatory discovery, and hard-fought, arm's-length negotiation" demonstrate that Class Counsel's request for attorneys' fees is reasonable. *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 934 (N.D. Ill. 2022). It is also supported by amble case law within this Circuit.

*See, e.g.*, Dkt. No. 86 (Plaintiff's Motion for Attorney's Fees, Costs, Expenses, and Service Award).

Last, Mr. Skambis takes issue with "settlement provisions requiring objectors to send copies of objections to multiple counsel rather than simply filing them with the Court." Ex. 3 at 3. But this is a commonplace requirement in class action settlement procedure. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 567 n.5 (N.D. Ill. 2011); *see also Carver v. Foresight Energy LP*, 2016 WL 9455818, at *2 (C.D. Ill. Oct. 25, 2016). Moreover, the Notice Plan, inclusive of said objection requirements, was approved by the Court.

The Court should overrule the objection accordingly.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[5]

**SOPHIA SAHAGÚN**, individually and on behalf of all others similarly situated,

Dated: February 20, 2026

By: /s/ *Philip L. Fraietta*

Philip L. Fraietta (6337165)
**BURSOR & FISHER, P.A.**
50 Main Street, Suite 475
White Plains, NY 10606
Tel.: 914-874-0710
E-Mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (6344855)
1330 Avenue of Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: aleslie@bursor.com

[5] In accordance with the Court's Case Procedures, a proposed order will be submitted via email concurrently herewith.

*Class Counsel*

J. Dominick Larry
**NICK LARRY LAW LLC**
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Local Counsel*